IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2001 Session

## DAVID TRAVIS BENNETT v. PAMELA JEAN BENNETT

**Appeal from the Circuit Court for Franklin County**
**No. 8939     J. Curtis Smith, Judge**

**No. M2000-02448-COA-R3-CV - Filed February 1, 2002**

The parties were divorced in 1995. The Final Decree awarded joint custody of their minor child. Pamela Jean Bennett ("Mother") was awarded primary physical custody, while David Travis Bennett ("Father") was awarded visitation. Thereafter, the Trial Court held three hearings upon the parties' petitions regarding several issues. Father appeals two of the three orders that the Trial Court entered, and his issues on appeal involve the following: the Trial Court's refusal, at the second hearing, to allow proof regarding issues previously reserved by the Trial Court at the first hearing; the Trial Court's refusal to allow Father to fire his attorney during the second hearing; the Trial Court's increase of Father's child support obligation; the Trial Court's refusal to modify child custody; the Trial Court's finding Father in contempt for failure to pay child support; and the Trial Court's refusal to find Mother in contempt for her alleged failure to comply with the visitation schedule. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

David Travis Bennett, *pro se*, Murfreesboro, Tennessee, for the Appellant.

Gregory M. O'Neal, Winchester, Tennessee, for the Appellee, Pamela Jean Bennett.

# OPINION

## Background

David Travis Bennett and Pamela Jean Bennett were divorced in June 1995. The Final Decree awarded the parties joint custody of their only child ("Child") who then was approximately two years old. The Trial Court awarded physical custody of the Child to Mother and visitation to Father. The Final Decree set Father's child support obligation at $25 per week. The record on appeal shows that child support was set at this low amount because Father was then a college student.

In February 1998, Mother and Father filed petitions for contempt against each other. Mother alleged in her Petition for Contempt that Father was not complying with the Final Decree in a number of ways including that Father failed to return the Child in accordance with the visitation schedule and had refused to advise Mother of his and the Child's whereabouts. Mother also requested in her petition that the Trial Court modify the Final Decree and grant Mother full custody of the Child. Father alleged in his Petition for Contempt and to Modify that Mother failed to comply with the visitation scheduled provided by the Final Decree and requested the Trial Court modify the visitation schedule. Father also alleged Mother failed to provide medical care for the Child.

The Trial Court held a hearing on these motions in February 1998, and entered an order ("First Order") regarding its findings in March 1998. The record on appeal does not contain a transcript of this hearing or a Tenn. R. App. P. 24 (c) statement of the evidence. In the First Order, the Trial Court modified Father's visitation schedule to include visitation with the Child nearly every weekend "pending a further hearing in this matter . . . ." The Trial Court also stated, in its First Order, that it reserved its judgment regarding Father's allegations of Mother's contempt and "all other issues raised by the pleadings . . ." pending a future hearing.

In June 1998, Father filed a second Petition for Contempt and Modification alleging that Mother was in contempt because she was not complying with the modified visitation schedule. Father also requested the Trial Court grant full custody to him, alleging that Mother was not providing a safe and stable home environment for the Child and that the Child's stepfather ("Stepfather") was verbally abusive to the Child and had previously threatened Father.

Thereafter, Mother filed a response and a counter-petition for modification. Mother requested in her counter-petition that Father's child support obligation be increased because Father's income had increased since the entry of the Final Decree due to his employment as a school teacher. Father filed a response to this petition in which he denied he had an increase in income which would warrant an increase in child support.

In November 1999, the Trial Court entered an Order of Continuance stating that the hearing on the parties' pending petitions had been continued at least five times upon Father's motion. In this order, the Trial Court set the hearing for January 18, 2000, and prohibited any further continuances.

In January 2000, a lengthy hearing was held at which the parties testified and submitted the testimony of a number of witnesses. The hearing transcript shows, despite the Trial Court's reserving the issue of Mother's contempt and all other issues for a future hearing, that the Trial Court initially limited the proof to events that occurred *after* the First Order was entered in March 1998. The record on appeal, however, shows that shortly thereafter, the Trial Court partially amended its decision and allowed the parties to submit proof which predated the First Order related to the issue of contempt.

At the time of the January 2000, hearing, Father had not remarried. In the year preceding the hearing, Father had between five to six jobs and had relocated his residence numerous times. At the time of the hearing, Father had been employed as an insurance salesman for a few weeks, earning $420 per week in gross salary and $320 in net weekly salary for the first six weeks of his employment. Father testified that, after his first six weeks with this employer, his earnings would be based upon commission only. The record shows that Father has a degree in education and previously held three teaching jobs for short lengths of time. Despite previously earning more than $20,000 per year while teaching, Father continued to pay only $25 per week in child support, the amount set in the original Final Decree.

Mother had been married to Stepfather for three years at the time of this hearing, and the two of them had a two-year old child and were expecting a second one. Mother was not employed outside of the home, while Stepfather worked full-time in a manufacturing facility. The two of them testified that Stepfather earned enough money to financially support the family. Mother neither had completed high school, nor obtained a GED.

Father testified Mother had failed to provide the Child to him for visitation on approximately seven to eight occasions in 1998 and 1999. The parties had agreed-upon locations which were town squares or police stations for the exchange of the Child for Father's visitation periods. On Father's behalf, approximately five police officers testified that Mother was not present at the time that Father told the officers was his time to begin visitation with the Child.

Father also testified Mother and Stepfather had made derogatory remarks about him and his family in front of the Child. Father further testified he believed Stepfather was mentally abusive towards the Child and claimed Stepfather was trying to take his place as the Child's father. Father testified it was his belief that the Child, age six at the time of this hearing, was under an inordinate amount of stress while in Mother's and Stepfather's care. Moreover, Father testified that due to Mother's lack of education, she would not be helpful to the Child's studies. Father testified Mother did not participate in the Child's parent-teacher conferences or attend the Child's ball games. In addition, Father testified Mother failed to provide adequate medical care to the Child.

Mother, Stepfather, and the Child's maternal grandmother testified the Child seemed anxious or stressed only when Father would call him or when Father would attempt to start an argument with Mother. Mother testified she assists the Child with his homework, keeps up-to-date with the Child's teachers, and attends the Child's ball games. The proof in the record shows the Child was an excellent student and had a good overall school attendance record. Mother testified

the Child had a regular pediatrician and dentist. Stepfather had taken the Child hunting and fishing with him.

Mother and Stepfather testified that Father tape records his telephone conversations with them and the Child. Father did not deny this. Father also testified he kept calenders and notes of occurrences involving the Child and Mother and Stepfather.

On behalf of Father, a dentist testified she diagnosed the Child with Bruxism, a condition where the patient grinds his teeth at night. The dentist testified Bruxism is typically stress-related. The dentist further testified the Child's anterior teeth had been ground down to the gum line and that this was the worst case she had ever seen. The dentist testified this condition was treatable with a mouth guard and that this problem would have a detrimental effect on the Child's permanent teeth. The record on appeal shows the dentist examined the Child one time at the Father's request. On the other hand, Mother testified the Child had a regular dentist who had not recommended anything for the condition until the Child gets his permanent teeth. In addition, the proof in the record shows that the Child, at age six, was still experiencing difficulty with bed-wetting at night.

The transcript of the hearing shows that well into the hearing, Father asked the Trial Court "if I fire my lawyer, can I finish these questions?" The Trial Court responded "No, sir, you can't. You fired several lawyers. We're going to finish today. . . ."

With respect to both parties' allegations that the Child endured stress while in the other's care, the technical record on appeal shows that, after the parties presented their proof, the Trial Court stated the following:

> I only have the five hours we have been in the courtroom today to listen to testimony and observe the demeanor of the witnesses who are involved in this issue about the child. It doesn't go unnoticed to me or probably unnoticed to those in the courtroom that [Father] is, at least in what he's displayed today from the testimony that I have heard, that substantiates what I saw today, he's an aggressive personality

* * * * * *

> I didn't see anything from the [Mother's and Stepfather's] side that indicated to me that they were . . . they both appeared to be fairly well at ease and I noticed their demeanor was more low-keyed. . . .

* * * * * *

> For whatever reason, I think that again [Father] worries too much about what's being said and I think he questions his son too often about what is going on, probably [sic] very minute detail. Of course, any situation such as this stresses a child.
>
> But my finding is that the best majority of the stress is coming from [Father] and not from [Mother and Stepfather]. . . .

The transcript of the January 2000, hearing shows that at the close of proof, the Trial Court stated that Father's child support obligation should increase and be "based on the guidelines, based on the [$415] or [$420] that he's reported."

The Trial Court entered its order ("Second Order") in April 2000 on the January 2000, hearing. In the Second Order, the Trial Court dismissed Father's petition for contempt against Mother; increased Father's child support obligation from $25 per week to $72 per week; ordered Father to provide health and dental insurance coverage for the benefit of the Child; and modified the visitation schedule such that Father would not have visitation every weekend. The Trial Court also continued joint custody of the Child with Mother maintaining primary physical custody of the Child because "there has been no change of circumstances proven that would necessitate a change of custody. . . ."

After the January 2000, hearing but before the entry of the Second Order, Father filed a Motion for Rehearing, Entry of Order, and Reconsideration of Judgment of the Court. In this motion, Father alleged that evidence was not presented at the hearing "due to excusable neglect" and that this evidence would result in a modification of the Trial Court's decision. Father also alleged he had not been able to reach his attorney since the January 2000, hearing.

Mother filed a Petition for Contempt in June 2000, alleging that Father had failed to make child support payments. In August 2000, the Trial Court held a hearing on Mother's petition and Father's motion for rehearing. The record on appeal contains no transcript from this hearing but does contain a Tenn. R. App. P. 24 Statement of the Evidence. The Statement provides that Mother testified that Father was approximately $1,400 in arrears for child support and that Father had never provided health insurance for the benefit of the Child. The Statement also shows that Father testified he had held three jobs since the last hearing held in January 2000, and that he had been terminated from his job as an insurance salesman. Father testified he had a pending lawsuit against one of his former employers for back wages and that he was a disabled veteran. At the time of this hearing, Father had a job with a temporary service in Murfreesboro, earning approximately $8.00 an hour. The Statement also provides that Father testified he was not sure how much his child support obligation was or when his obligation started, but he admitted he paid $144 in child support three days after the January 2000, hearing.

Following the August 2000, hearing, the Trial Court entered its order ("Third Order"), holding Father in contempt for willfully failing to pay child support. The Trial Court held in the Third Order that Father was approximately $1,300 in arrears for child support and awarded attorney's fees to Mother.[1] The Trial Court further ordered Father to serve ten days in jail for his contempt and set a purge amount of $250 which, if paid, was to be applied to Father's child support arrearage. In addition, the Trial Court, in its Third Order, dismissed Father's motion for rehearing, stating that the motion was without merit.

Father appeals the Third Order and the Trial Court's dismissal of his motion to rehear regarding the Second Order.

## Discussion

On appeal and although not exactly stated as such, Father raises the following issues: (1) whether the Trial Court erred, at the January 2000, hearing, in refusing to allow proof regarding the issues reserved by the Trial Court in its First Order; (2) whether the Trial Court, at the January 2000, hearing, erred in refusing Father's request to fire his attorney and proceed with the remainder of the hearing *pro se*; (3) whether the Trial Court erred in denying Father's request for a modification of custody; (4) whether the Trial Court erred in increasing his child support obligation from $25 per week to $72 per week; (5) whether the Trial Court erred in finding Father in contempt for non-payment of child support; and (6) whether the Trial Court erred in denying Father's petition for contempt against Mother for her alleged non-compliance with the parties' visitation schedule. Mother raises no additional issues on appeal.

Before we address the merits of Father's issues on appeal, we first note that Father included many factual allegations in his brief on appeal which are not supported by or contained in the record on appeal. *See* Tenn.Ct. App. R. 6. While we did not consider these allegations, Father's inclusion of these unsupported allegations made it more difficult for this Court to address Father's legitimate issues.

The Trial Court's findings of fact are subject to a *de novo* review upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997). With respect to the Trial Court's refusal to allow Father to fire his attorney at the January 2000, hearing, and the Trial Court's findings regarding the issue of each party's contempt, we will review these determinations using an abuse of discretion standard. *Wright v. Quillen*, 909 S.W.2d 804, 814 (Tenn. Ct. App. 1995); *Quality First Staffing Serv. v. Chase-Caveat Serv., Inc.*, No. 02A01-9807-CH-00205, 1999 WL 281312, at * 3 (Tenn. Ct. App. May 7, 1999), *no appl. perm. app. filed*; *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964). We should not reverse for "'abuse of discretion a discretionary

---

[1] For simplicity's sake, we use round numbers in this opinion.

judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining.'" *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn. 1999) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

Father's first issue on appeal involves the Trial Court's failure to allow proof at the January 2000, hearing regarding all of the issues it reserved in the First Order on the February 1998 hearing. The First Order decided only the issue of visitation and reserved judgment regarding the issue of Mother's contempt and all other pending matters raised in the pleadings. Although Father raises as an issue the Trial Court's failure to allow proof regarding all issues which were reserved by the First Order, Father provides argument in his brief only on the Trial Court's refusal to allow proof regarding the issue of Mother's contempt. Therefore, we will consider only the issue for which Father provided argument – the Trial Court's refusal to hear proof related to the reserved issue of Mother's contempt for failure to follow the visitation schedule. *See Forde v. Fisk Univ.,* 661 S.W.2d 883, 886 (Tenn. Ct. App. 1983); *Thomas v. Thomas*, E1999-00563-COA-R3-CV, 2000 WL 276886, at * 1 (Tenn. Ct. App. Mar. 15, 2000), *no appl. perm. app. filed; see also Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997) (holding that parties who proceed *pro se* "are not excused from complying with applicable substantive and procedural law . . .").

The transcript of the January 2000, hearing shows that early in the hearing, the Trial Court and the attorneys apparently were confused regarding which issues were reserved by the First Order. The Trial Court initially stated "I don't want to hear anything prior to March of '98 because your March of '98 order foreclosed everything in the past. . . ." A short time thereafter, however, the Trial Court stated that if the First Order reserved the issue of Mother's contempt, then it would hear proof regarding that issue. Accordingly, while the Trial Court initially erred by failing to allow proof on this issue, this amounted only to harmless error because the Trial Court quickly amended its decision and allowed this proof. *See* Tenn. R. App. P. 36(b).

We next consider Father's argument that the Trial Court erred in refusing Father's request to fire his attorney during the January 2000, hearing and proceed with the remainder of the hearing *pro se*. As discussed, the Trial Court's refusal to allow Father to fire his attorney at the January 2000, hearing is subject to an abuse of discretion review. *Wright v. Quillen*, 909 S.W.2d at 814. Father correctly contends that he has the right to represent himself pursuant to Tenn. Code Ann. § 23-1-109. This statute provides that "[a]ny person may conduct and manage the person's own case in any court of this state." This Court has held that this right, however, is subject to "reasonable control by the courts." *Harrison v. Laursen*, No. 01A01-9705-CH-00238, 1998 WL 70635, at * 4 (Tenn. Ct. App. Feb. 20, 1998), *no appl. perm. app. filed.* Father, in asking to fire his attorney and proceed *pro se,* did not ask that the hearing be continued. We hold that even if the Trial Court's refusal to allow Father to fire his attorney was error, a consideration of the whole record does not show that this error more probably than not affected the judgment or resulted in prejudice to the judicial process, and, therefore, it was harmless error. *See* Tenn. R. App. P. 36(b).

Next, we review the Trial Court's refusal to modify custody. Father contends the Trial Court's prior award of joint custody to both parties and physical custody to Mother should have been modified to an award of sole custody to Father. The thrust of Father's argument is that

since Mother married Stepfather, the Child has endured a tremendous amount of stress while in Mother's and Stepfather's care. Father argues this stress has resulted in the Child's teeth-grinding and bed-wetting problems. Father contends Mother's remarriage and the Child's problems are sufficient to justify a modification of custody.

The Trial Court's previous custody determination contained in the Final Decree is *res judicata* and is, therefore, conclusive unless it is shown that "some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody." *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). Tenn. Code Ann. § 36-6-101(a)(1) provides that custody determinations are subject to modification "as the exigencies of the case may require." Courts afford a strong presumption in favor of the existing custody arrangement. *Hoalcraft v. Smithson*, 19 S.W.3d at 829.

The person seeking a change of custody has the burden of establishing that: (1) a material change of circumstances has occurred which was not reasonably foreseeable at the time of the original custody determination; and (2) the child's best interests will be served by the change of custody. *Id.* This Court further defined "material change of circumstances" as those circumstances of the child which affect the well-being of the child, as opposed to circumstances affecting the parents. *Id.* If the trial court finds that the moving party has not established a material change of circumstances, then the trial court need not make the second inquiry involving whether the change of custody would serve the child's best interests. *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999).

Remarriage of the custodial parent, alone, is not a material change of circumstances. *Richardson v. Richardson*, No. W2000-02374-COA-R3-CV, 2001 WL 687074, at * 3 (Tenn. Ct. App. June 14, 2000), *no appl. perm. app. filed*; *Tortorich v. Erickson*, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984). Where the remarriage, however, results in a change in the child's home environment, the trial court may consider the remarriage as a factor in determining whether a material change of circumstances has occurred. *Id.*; *Crabtree v. Crabtree*, No.E2000-00501-COA-R3-CV, 2000 WL 816807, at * 2 (Tenn. Ct. App. June 23, 2000), *no appl. perm. app. filed*.

In the Second Order, the Trial Court held there was "no change of circumstances proven that would necessitate a change of custody. . . ." The transcript of the January 2000, hearing shows the Trial Court stated that it found the majority of the Child's stress was due to the Father. Father contends on appeal that the Trial Court erroneously found that the Child's stress was caused by his conduct and that, since Mother and Stepfather have primary physical custody of the Child, they are the culprits of the Child's stress. As discussed, the Trial Court's finding is based upon its observation of the parties at the January 2000, hearing, and its comparison between Father's demeanor and the demeanor of Mother and Stepfather. "Unlike this Court, the [T]rial [C]ourt observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The Trial Court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts

will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Based upon the record on appeal and the deference we afford the Trial Court's assessment of the parties' demeanor and credibility, we hold that the evidence does not preponderate against the Trial Court's factual finding that the Child's stress was caused by his Father. Accordingly, we find no error with the Trial Court's determination that Father did not carry his burden of showing a material change of circumstances concerning the Child.

We next address Father's argument on appeal that the Trial Court erred, in the Second Order, in raising his child support obligation from $25 per week to $72 per week. The record on appeal shows that Father's initial child support obligation was only $25 per week because he was a college student when the Final Decree was entered. At the January 2000, hearing, Father testified that in his job as an insurance salesman, he was earning $420 gross weekly income and that his net weekly income was $320 per week.

In setting child support obligations, the court "shall apply as a rebuttable presumption the child support guidelines. . . ." Tenn. Code Ann. § 36-5-101(e)(1)(A). The Child Support Guidelines provide that a child support award is based upon a "flat percentage of the obligor's net income. . . ." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(2). In determining whether the child support obligation should be modified, the trial court shall apply the "significant variance test" to compare the Guidelines amount and the current support obligation. Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3). "Significant variance" is defined by the Guidelines as "at least 15% if the current support is . . . [$100] or greater per month and at least . . . [$15] if the current support is less than $100 . . . per month." *Id.*

The record on appeal shows that a significance variance existed between Father's child support obligation set by the Final Decree at $25 per week and the Guidelines amount. *See id.* On appeal, Father contends only that the Trial Court erred in increasing his child support to $72 per week because he has joint custody of the Child. Father does not contend that his current child support obligation of $72 per week does not comply with the Guidelines. While it is true the parties have joint custody of the Child, Mother has primary physical custody while Father exercises visitation. The fact that the obligor parent has joint custody of the child has no bearing on the application of the Guidelines where the obligor parent does not have primary physical custody and only has visitation. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(5)-(6). The Guidelines, in setting the minimum base for child support, contemplate the type of visitation Father, as the obligor

parent, has.[2]  *Id.*  Accordingly, we hold the Trial Court correctly increased Father's child support obligation from $25 per week to $72 per week.

Next, we address Father's argument that the Trial Court erred in finding him in contempt of the Second Order for his failure to pay child support.  "An act of contempt is a wilful or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000).  Tennessee courts have inherent power to punish contempt, but this power is limited by statute.  Tenn. Code Ann. § 29-9-102 describes the acts which constitute contempt and provides the scope of the court's power of contempt, in pertinent part, as follows:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases: . . .
>
> > (3) The willful disobedience or resistance of any officer of the [sic] such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts. . . .

"Thus, to find contempt under this statute, a court must find the misbehavior, disobedience, resistance, or interference to be wilful." *Ahern v. Ahern*, 15 S.W.3d at 79.

Father contends the Trial Court erred in finding him in contempt, citing *Ahern v. Ahern*, which held as follows:

> For the court to find that [the obligor's] failure to pay alimony and child support was contemptuous, the court first must determine that [the obligor] had the ability to pay at the time the support was due and then determine that the failure to pay was wilful.

*Id.*

In the Third Order, the Trial Court stated that it found Father "in willful contempt of this Court's orders. . . ."  Although Father's argument is somewhat unclear, Father appears to contend that the Trial Court erred for the following reasons in finding that he had the ability to pay the child support when it was due and that this failure to pay was willful:  Father claims he did not know the exact amount he was to pay until the Second Order was entered in late April 2000; Father

---

[2] The Guidelines state that:
> [t]hese [G]uidelines are designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year. . . .

Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(6).

suffered a loss of employment after the Trial Court increased his child support obligation; and one of Father's employers failed to pay him $1,500 in wages for which Father had a pending lawsuit for back wages.

The Trial Court did not articulate a separate finding in the Third Order that Father had the ability to pay the child support when it was due. The Third Order does contain the Trial Court's finding that Father willfully failed to pay child support. While *Ahern v. Ahern* requires that a trial court make *both* findings that the obligor had the ability to pay the support when it was due *and* that the obligor willfully failed to pay the child support, we hold that Father's having had the ability to pay when the support was due is implicit in the Trial Court's finding that his failure to pay was willful. *See id.* We are unable to imagine a factual situation in which an individual's failure to pay child support could be willful under the contempt statute if he did not have the ability to pay when the support was due. The converse is not true as an individual could have the ability to pay when the support was due, not pay it, and yet the nonpayment not be willful. *See also In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999) (holding, in a termination of parental rights case, that the parental rights termination statutory definition of "willfully failed to support" and "willfully failed to make reasonable payment toward such child's support" found at Tenn. Code Ann. § 36-1-102(1)(D), was unconstitutional because that specific statutory definition did not include an element of intent). The contempt statute, however, contains no such flawed statutory definition of "willful" as did the statute in *In re Swanson*. Accordingly, while it would have been preferable for the Trial Court to state separately that Father had the ability to pay and that he willfully failed to pay the child support, we hold the Trial Court's Third Order complies with the holding of *Ahern v. Ahern. See Ahern v. Ahern,* 15 S.W.3d at 79.

The Statement of the Evidence for the August 2000, hearing, provides that, while Father lost two jobs in 2000 after his child support obligation was increased, he was able to find new employment each time. In addition, despite Father's argument that he was unsure about how much his child support obligation had increased, the Statement of the Evidence shows that Father admitted he paid $144, 2 weeks at $72 per week as ordered, in child support three days after the January 2000, hearing. Moreover, the record on appeal shows Father holds a college degree in education, and his employment history clearly shows Father is employable and has transferrable job skills. The facts and circumstances contained in the record on appeal do not preponderate against the Trial Court's determination that Father had the ability to pay the child support when due and willfully failed to do so. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). Accordingly, we find no error by the Trial Court in holding Father in contempt.

We next consider Father's remaining issue on appeal regarding whether the Trial Court erred in determining that Mother was not in contempt for her failure to follow the visitation schedule. The Trial Court, in the Second Order, held that Mother had not willfully violated the Trial Court's orders. Furthermore, the transcript of the January 2000, hearing shows that the Trial Court stated it found that Father did not carry his burden of proof that Mother willfully violated the visitation schedule. The Trial Court further stated that "I don't find if she did miss any, that it was willful on her part."

In determining whether Mother willfully violated the visitation schedule, the Trial Court had to determine which party was more credible. The Trial Court obviously found Mother to be the more credible witness on this issue as it found that her non-compliance, if any, was not willful. As previously discussed, the Trial Court's determinations of crediblity are afforded deference by this Court, and this Court will "not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d at 783. Based upon the record and the deference we give the Trial Court's determinations of credibility, we find no error in the Trial Court's determination that Mother was not in contempt. *See Quality First Staffing Serv. v. Chase-Cavett Serv., Inc.*, 1999 WL 281312, at * 3; *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d at 912.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, David Travis Bennett, and his surety.

_____
D. MICHAEL SWINEY, JUDGE