IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
ASSIGNED ON BRIEF APRIL 12, 2010

## SARAH E. PALMER v. MICHAEL HOWARD PALMER

**Direct Appeal from the Law Court for Washington County**
**No. 27255     Thomas J. Seeley, Jr., Judge**

_____

**No. E2009-00882-COA-R3-CV - Filed May 7, 2010**

_____

Shortly after their marriage, both Husband and Wife filed complaints for divorce. The trial court found both parties guilty of inappropriate marital conduct and granted a divorce. Husband raises numerous issues on appeal. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Law Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Michael H. Palmer, Johnson City, Tennessee, *pro se*

No appearance on behalf of the appellee, Sarah Elizabeth Palmer

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Sarah Elizabeth Palmer ("Wife")[1] and Michael Howard Palmer ("Husband") were married in Sevier County, Tennessee, on April 26, 2008. The parties separated on October 28, 2008, and Wife filed a "Complaint for Divorce" in the Washington County, Tennessee Circuit Court on October 31, 2008, alleging the grounds of inappropriate marital conduct and irreconcilable differences.

On December 9, 2008, Husband, acting pro se, filed a "Motion for Dismissal" claiming that Wife's divorce complaint lacked merit, and also that the trial court lacked jurisdiction because neither party lived within the State of Tennessee throughout the six-month period preceding the filing of the complaint, nor did the divorce grounds arise in the state.[2] Two days later, Husband filed an "Answer to Complaint," again challenging the court's jurisdiction, and further claiming that Wife's alleged grounds for divorce had been "fabricated." Along with his "Answer to Complaint," Husband simultaneously filed a "Counterclaim" seeking a divorce on the grounds that Wife had refused to move to Tennessee for two years and absence or desertion for one year.[3] In his "Counterclaim," Husband listed a Johnson City, Tennessee address for himself, yet he continued to state that neither party had been a Tennessee resident for six months prior to the filing of his claim.

The trial court, in its April 21, 2009 "Final Decree of Divorce" specifically found that the residency requirements of Tennessee Code Annotated section 36-4-104 had been met because Husband had resided in the state for the six month period preceding the filing of the action. It further found both parties guilty of inappropriate marital conduct, and therefore it granted both parties' complaints for divorce.[4] Additionally, the trial court imposed sanctions against Husband:

---

[1]Wife failed to file an appellate brief.

[2]Husband later withdrew his "Motion for Dismissal."

[3]Husband noted that "a time allowance must be waited before the divorce requested herein be finalized" because the statutory time requirements for these grounds had not been met.

[4]In its "Order of Modification of the Record," the trial court stated:

Plaintiff's counsel, in her opening statement, stated that plaintiff would 1) stipulate that defendant had grounds for divorce; 2) agree defendant could have whatever marital property there was, if any; and 3) plaintiff would assume any marital debt, if any. . . . I then asked Mr. Palmer if he still wanted a divorce and he answered in the affirmative.

The Court finds that Defendant has violated the provisions of Rule 11.02, Tenn. R. Civ. P., and Plaintiff's Motion for Rule 11 Sanctions is therefore GRANTED. The Court finds that Defendant has abused the justice system in this action by filing numerous papers and motions that totally lack merit, that were presented for an improper purpose, and that presented claims, defenses, or other legal contentions that are not warranted by existing law. The Court accordingly imposes sanctions upon the Defendant . . . and directs the Defendant to pay Plaintiff's attorney's fees in the amount of $2,500.00, which the Court finds were incurred as a direct result of Defendant's violation of Rule 11.02[.]

Husband appeals.

## II.   ISSUES PRESENTED

Appellant presents the following issues for review, summarized as follows:

1.     Whether the court lacked jurisdiction;

2.     Whether the trial court failed to consider Appellants' motions;

3.     Whether Appellant was improperly denied an attorney;

4.     Whether Appellant was denied the transcripts requested;

5.     Whether the trial court improperly denied Appellant's discovery attempts;

6.     Whether the court erred in imposing sanctions against Appellant;

7.     Whether the court issued an order based on false information;

8.     Whether the court erred in failing to address the parties' marital debts and marital property;

9.     Whether the trial court erred in failing to place anyone under oath; and

10.    Whether Appellant was denied mediation;

For the following reasons, we affirm the decision of the circuit court.

### III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2009); **Bogan v. Bogan**, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. **Watson v. Watson**, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. **Ganzevoort v. Russell**, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary. **Wells v. Tennessee Bd. of Regents**, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### IV. DISCUSSION

#### A. Jurisdiction

At the outset, we must consider whether the trial court lacked jurisdiction in this matter. "Tennessee courts may grant a divorce where the person seeking the divorce is a bona fide resident of Tennessee when the acts complained of were committed or, if the acts complained of were committed outside Tennessee, if the plaintiff [or the defendant] has resided[5] in Tennessee for six months prior to filing the complaint for divorce. **Anene v. Anene**, No. 03A01-9511-CV-00387, 1996 WL 557802, at *2 (Tenn. Ct. App. Oct. 2, 1996) *perm. app. denied* (Tenn. Apr. 7, 1997) (citing Tenn. Code Ann. § 36-4-104). Husband claims that neither party resided in Tennessee for six months preceding the filing of the complaints, and that the grounds for divorce did not arise in this state.

---

[5]"Tennessee courts have interpreted the term 'reside' to mean domicile." **Anene v. Anene**, No. 03A01-9511-CV-00387, 1996 WL 557802, at *2 (Tenn. Ct. App. Oct. 2, 1996) *perm. app. denied* (Tenn. Apr. 7, 1997) (citing *Wiseman v. Wiseman*, 393 S.W.2d 892 (Tenn. 1965); *Snodgrass v. Snodgrass*, 357 S.W.2d 829 (Tenn. 1962)).

In his brief, Husband claims that he is a resident of Florida, that Wife is a resident of Connecticut, and that the parties' marital domicile was "in an 18 wheeler semi-truck[.]" He states that he received mail at his parents' home in Washington County, Tennessee, "due to his Parents had be[en] stable at that same location for over 40 years],]" but that he also "received his mail via a scanning machine at numerous locations around the country[.]" He further states that Wife received "all her mail at the address she had prior to the union of marriage at the address in Connecticut where she lived."

Husband contends that the trial court never addressed the residency issue despite his offering "multiple documents" to support his claim that the court lacked jurisdiction. Specifically, Husband cites a letter from his attorney, which he claims "shows he was advised the Parties w[ere] never residents of either Washington County, or the state of Tennessee." Husband has attached this letter to his brief as "evidence." Courts in this state have "repeatedly held the documents attached to appellate briefs which were not admitted to the trial court do not constitute evidence introduced to and admitted by the trial court." *State v. Anderson*, No. W2008-00188-CCA-R3-CD, 2010 WL 1444319, at *21 (Tenn. Crim. App. Apr. 9, 2010) (citing Tenn. R. App. P. 24(g); *Grover L. Dunigan v. State*, No. E2005-01574-CCA-R3-PC, 2006 WL 433699, at *3 (Tenn. Crim. App. Feb. 23, 2006) *perm. app. denied* (Tenn. June 26, 2006) (stating that "documents attached to an appellate brief but not included in the record on appeal cannot be considered by this court as part of the record on appeal")). We are unable to locate this letter within the record. Nevertheless, we find that even if it was somehow properly introduced, it offers no evidence that the trial court lacked jurisdiction. In the letter, Husband's former attorney merely acknowledges that Husband "on several occasions . . . informed [him] that [he] w[as] not a legal resident of Tennessee for six (6) months prior to the filing of the divorce case in Washington County, and that [Husband] had evidence [to] prove the same."

Husband also cites to two attached police reports–which are also included within the record– which he claims demonstrate that both the grounds for separation and the separation, itself, arose in Kansas. These reports stem from the parties' dispute as to who is the rightful owner of a vehicle. Shortly after their separation, Husband was charged, in Kansas, with vehicle theft. The reports indicate that in November 2008, Wife told the reporting officer that she and Husband had lived together in Tennessee with Husband's parents until approximately four weeks earlier when the parties had traveled to Kansas to visit Wife's parents in order for Wife to "escape," and that Husband continued to live with his parents in Washington County, Tennessee. The reports provide a Kansas address for Wife and a Washington County, Tennessee address for Husband. Wife further indicated in the reports that she and her father had driven to Tennessee on October 31, 2008, to retrieve her personal belongings.

The reports provide additional support for the trial court's finding that Husband had resided in Tennessee for six months preceding the filing of the complaint, which, coupled with Husband's contention that the grounds for divorce arose outside of Tennessee, confer jurisdiction upon the trial court. ***See* Tenn. Code Ann. § 36-4-104**. Alternatively, the reports support the conclusion that Husband was a Tennessee resident when the acts complained of were committed, providing an additional basis for jurisdiction. ***See id.***

We note that Husband has failed to cite to any "evidence" other than the letter and the reports. Rather than providing a transcript of the final hearing, Husband offered two documents entitled "Statement of Proceedings by Nonparty Witness," containing statements from his parents, and his own statements in a "Statement of Proceeding." Wife contested these "statements," and the trial court issued an "Order of Modification of the Record" reconciling the conflicting accounts. The trial court's "Order of Modification of the Record" contains no mention of any testimony or arguments regarding jurisdiction. In sum, Husband has failed to provide sufficient evidence to support his argument that the trial court lacked jurisdiction.[6]

## B. Failure to Consider Motions

In his brief, Husband argues that his pre-trial motions were never heard, and that he was prepared only for motions to be heard on the date the final judgment was rendered. The record before us contains a "Notice of Hearing" stating that on April 8, 2009, Wife's attorney "intend[s] to conduct a <u>full and final hearing on the merits of this cause</u>[.]" A certificate of service indicates that Husband's then-attorney was served. Additionally, the "Final Decree of Divorce" was entered only after a consideration of "all pending motions . . . and any responses thereto[.]"

Husband further argues that his "Motion for New Trial Where Verdict is Against the Weight of the Evidence, in the Alternative, Motion for Relief from Judg[]ment or Order" and his "Motion for Stay," both attached to his brief, were improperly "sent back to [him] without ever being filed by the trial court." These motions allegedly submitted by Husband are not properly included within the record before us. However, Wife's "Response in Opposition

---

[6]Husband also attempts to argue that Wife's attorney "was aware" that the trial court lacked jurisdiction, and therefore that she had a "responsibility to remove [herself] as counsel and report to the court this matter of false facts enclosed within the complaint in this cause." Finding jurisdiction, we need not consider this argument.

to Motion for Stay," which is properly before us, indicates that Husband filed his "Notice of Appeal" to this Court on April 24, 2009, prior to his May 16, 2009 submission of the motions for a new trial and for a stay. When Husband filed his "Notice of Appeal," the jurisdiction of this Court attached, and the trial court lost jurisdiction. ***Born Again Church & Christian Outreach Ministries, Inc. v. Myler***, 266 S.W.3d 421, 425 (Tenn. Ct. App. 2007) (citations omitted). Husband's issues regarding motions are without merit.[7]

### C. Denial of Attorney

Next, Husband contends that his "rights to have counsel present" during the final hearing were violated. Husband describes his representation, or lack thereof, as follows:

> Appellant hired an attorney ini[t]ially when the complaint for divorce was first filed, and the Appellant and his first attorney did not agree on the matters addressed in this matter, so Appellant fired the ini[t]ial attorney . . . . The Appellant then started representing himself . . . . The Appellant then hired attorney Brad Sproles to represent him . . . . [A]fter Sproles was aware of opposing counsel['s] actions in filing false documents unto the trial court[,] Sproles did not want to report these actions to the Board of Professional Conduct, so Sproles decided to remove himself as counsel, with no prior warning to his client[.] Counsel for Appellant removed himself during this date that was set for motions, without any warning what so ever to his client. As the trial court recognized the request to remove counsel for the Appellant, and granted this motion of recusal, the trial court never asked the Appellant if he wanted to retain counsel or represent him in this matter. The trial court never addressed the issue, or even gave the Appellant any time to retain counsel, thus creating the Appellant to represent himself without counsel. The Appellant's position is, the Appellant should have been granted a continuance to allow him to retain counsel. . . . In short, the Appellant was not given the chance to be represented by a[] licensed attorney.

Husband's counsel filed a motion to withdraw on April 1, 2009, citing a conflict of

---

[7]Husband seems to believe that his "post judg[]ment motions" were not allowed to be filed based on the trial court's "Order" enjoining Husband from filing a lawsuit in Washington County, Tennessee, without an attorney certifying that the pleading or document is warranted. Husband contends that this "Order" was based upon improper information; however, we need not consider this issue, as we find an independent basis for the trial court's refusal to allow the filing of Husband's "post judgment" motions.

interest. The trial court, in its "Order of Modification of the Record," indicates that at the beginning of the final hearing, on April 8, 2009, Husband's attorney was allowed to withdraw, and that when Husband was asked if he objected to the withdrawal, "[h]e indicated that he did not." The court then asked the parties if they were ready to proceed, and Wife's attorney answered affirmatively, whereas Husband responded only that he still had a motion to dismiss pending.[8]

Husband contends that after allowing his attorney to withdraw, the trial court should have inquired as to whether Husband wished to retain further counsel, and that it should have granted him a continuance of the matter. The record does not indicate, nor does Husband argue, that Husband asked for either an attorney or a continuance. He cites no authority imposing upon the trial court a duty to so act, and we have found none. This issue is without merit.

### D. Transcript

Attached to Husband's brief is a document, apparently authored by himself, entitled "Notable Mention" which states as follows:

> A court reporter took a transcript of this hearing, but when the Appellant tried to get a copy of this, he was told that the court reporter had lost it. Appellant was not able to get a copy of the transcripts.

On appeal, Husband lists as a "basis of appeal" that he "was never given the transcripts he requested[.]" However, he fails to specify what information would have been contained within the transcript, as compared with the trial court's "Order of Modification of the Record."

Tennessee Rule of Appellate Procedure 24 provides that "[i]f no stenographic report, substantially verbatim recital or transcript of the proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection[,]" the appellee may then file objections thereto, and any differences "shall be submitted to and settled by the trial court[.]" As we noted above, Appellant filed "Statements" of both himself and his parents, Wife filed an objection, and the trial court reconciled the conflicting accounts in its "Order of Modification of the

---

[8]The trial court then reminded Husband that his motion to dismiss had been withdrawn.

Record." Contrary to Husband's assertion, the allegation that the transcript may have been lost does not provide a basis for relief on appeal.

### *E. Discovery*

Next, Husband argues that his discovery attempts were frustrated by Wife's counsel:

> The Appellant requested discovery from opposing counsel, but opposing counsel ignored all requests[] and attempts by the Appellant to seek discovery. The Appellant also filed all the appropriate documentation for a deposition to be sought in this matter, but again opposing counsel ignored this action by the Appellant also. The Appellant filed a motion for contempt due to opposing Parties did not attend this date for a deposition. The Appellant also filed a motion for a Bill of Particulars[9] that was never addressed by opposing counsel.

The record does not include any of the above-mentioned documents allegedly submitted or filed by Husband; therefore, we find this issue without merit.

### *F. Sanctions*

In the "conclusion and summ[a]ry" portion of his brief, Husband argues that the trial court erred in ordering him to pay Wife's $2,500.00 attorney fee without affording him "21 days prior notice . . . before these sanctions were levied[.]" In his "Statement of Proceeding," Husband stated that at the final hearing, he "tried to tell Judge Seeley, that [Wife's attorney] had not filed her Motion for Sanctions 21 days prior to this hearing,[10] and [Wife's attorney] wasn't even on this case 21 days prior to this hearing, but once again, Judge Seeley would not let me address the court in any fashion." However, Wife, in her "Objection to Statement of Proceedings," indicated that "[Husband] did not make this statement to the Court[,]" and the trial court's "Order of Modification of the Record," reconciling the conflicting statements, does not mention that Husband raised the issue of whether the requirements

---

[9]A "Bill of Particulars" allows a *criminal* defendant to seek details of the charge against him. **Tenn. R. Crim. P. 7(c);** *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991).

[10]We note that Husband's alleged argument misconstrues the safe-harbor provision of Tennessee Rule of Civil Procedure 11.

surrounding a motion for sanctions had been fulfilled.  Because it appears that this issue was not raised in the trial court, we will not address the issue on appeal.  ***See Simpson v. Frontier Cmty. Credit Union***, 810 S.W.2d 147, 153 (Tenn. 1991).

### G.  Miscellaneous Bases

Finally, Husband lists as additional bases of appeal that: the "parties never had mediation," the "court did not swear anyone in to be under oath," the "court did not address the debts, or marital property," and the "court did not hear grounds for complaints." Husband, however, fails to provide any argument whatsoever regarding these bases.

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts.  *Whitaker v. Whirlpool Corp.,* 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.,* 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997).  The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).  However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary.  Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.  *Edmundson v. Pratt,* 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley,* 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).

***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

Taking into account that Husband is a pro se litigant, we find that Husband has failed to present a sufficient argument concerning these issues. Tennessee Rule of Civil Procedure 27(a) provides that an appellant's brief

> shall contain ... [a]n argument, which may be preceded by a summary of argument, setting forth the contention of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record ... relied on[.]

"The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Boggs Kurlander Steele, LLC v. Horizon Commc'ns,* No. M2006-00018-COA-R3-CV, 2008 WL 490628, at *4 (Tenn. Ct. App. Feb. 21, 2008) (citing *Newcomb v. Kohler Co.,* 222 S.W.3d 368, 402 (Tenn. Ct. App. 2006); *see also Rector v. Halliburton,* No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *9 (Tenn. Ct. App. Feb. 26, 2003) (per curiam); *Rhea County v. Town of Graysville,* No. E2001-02313-COA-R3-CV, 2002 WL 1723681, at *7 (Tenn. Ct. App. July 25, 2002)).

On appeal, Husband addresses these issues only by listing them in the sections entitled "overview of basis of appeal" and "conclusion and summ[a]ry." This inclusion within a list of issues does not provide the "argument" and "citation to the authorities" required by Tennessee Rule of Appellate Procedure 27(a). Thus, we find, under Tennessee Rule of Appellate Procedure 27(a), that Husband has waived his right to have these issues considered by this Court.

## V.   CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellant, Michael Howard Palmer, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.