Eleanor W. PAEHLER, (As Executrix for the Estate of Louis Paehler, Deceased), Plaintiff–Appellant,

v.

UNION PLANTERS NATIONAL BANK, INC., Webster Safe and Lock Co., Inc., "Barbie" Archibald, Jean Johnson and Scott Fisher, Defendants–Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 22, 1997.

Application for Permission to Appeal Denied by Supreme Court April 20, 1998.

Eleanor W. Paehler, pro se.

Robert L. Crawford, Johnathan P. Lakey, Wyatt, Tarrant & Combs, Memphis, for Appellees, UP Bank, Archibald and Johnson.

CRAWFORD, Presiding Judge, Western Section.

This case involves the alleged theft of the contents of a safe deposit box. Plaintiff, Eleanor W. Paehler, appeals the order of the trial court granting summary judgment to defendants, Union Planters National Bank, Barbie Archibald, and Jean Johnson.

In 1975, Mrs. Paehler's husband, Louis Paehler, rented a safe deposit box from Union Planters. Louis Paehler died on October 8, 1987, and after his death, Mrs. Paehler was subsequently appointed executrix of his estate. On February 12, 1988, Mrs. Paehler, as executrix, went to the Union Planters Bank to open the safe deposit box. Entry to safe deposit boxes is accomplished by two keys—one kept by the customer and one kept by the bank. When a customer desires to enter a box, a card showing the date and time of entry must be signed by the customer, then a bank representative and the customer use the respective keys to access the box. Mrs. Paehler did not have the customer

key, so Union Planters arranged for the box to be drilled open by Webster Safe and Lock Company.

Barbie Archibald, an employee of Union Planters, accompanied Mrs. Paehler to open the safe deposit box. Scott Fisher, the locksmith employed by Webster Safe & Lock, drilled the lock and opened the door to the box. Archibald left the vault momentarily, but quickly returned, and Fisher handed the safe deposit box to Archibald. Archibald took the box to her desk behind the row of bank tellers while Fisher remained in the vault to repair the lock. Archibald called Jean Johnson, another bank employee, to tell her the box was ready to be inventoried. Mrs. Paehler remained in the waiting area until Johnson arrived. Johnson removed the box from Archibald's desk, and when Johnson opened the safe deposit box, it was empty.

In her deposition, Mrs. Paehler testified that Fisher pulled the safe deposit box out far enough to open the lid. She saw Fisher lift the lid of the box, and she observed what appeared to be a "box within a box." When Fisher started to push the safe deposit box back into its slot, Mrs. Paehler asked him to stop. Fisher lifted the lid a second time, and Mrs. Paehler saw a large manilla envelope in the box. However, Mrs. Paehler did not actually see Fisher move the envelope. Archibald testified in her deposition that Fisher did not lift the lid of the safe deposit box, and Fisher testified that he did not lift the lid of the box, that he did not open the box, and that the box was not opened in his presence.

Mrs. Paehler also claims that Rebecca Paehler, one of Louis Paehler's previous wives, entered the safe deposit box on January 14, 1983 and removed a certificate of deposit worth $ 17,909.12. Rebecca Paehler, who was not authorized to enter the box, signed the sign-in card for Louis Paehler's box, but later the signature was scratched out. Rebecca Paehler also rents a safe deposit box from Union Planters, and the bank claims that Rebecca merely signed the wrong card because the cards are in alphabetical order. Rebecca Paehler's signature appears on the proper card on the same date, but fifty minutes later. Mrs. Paehler did not

bring a claim against Rebecca Paehler, but instead she claims that Union Planters fraudulently allowed Rebecca Paehler to enter the wrong box.

Mrs. Paehler claims that there is a conspiracy against her and that her life is not her own. She contends that her files related to this lawsuit and evidence of the box's contents were stolen from her home and from her personal safe deposit box at a different bank.[1] She also claims that her phone has been tapped and that her attorneys' actions were controlled by Union Planters.[2]

On June 23, 1989, Mrs. Paehler filed her original complaint against Union Planters, Webster Safe, Barbie Archibald, Jean Johnson, and Scott Fisher for the "return of converted property of the Estate of Louis Paehler."[3] On August 5, 1993, Mrs. Paehler amended her complaint. The amended complaint alleges that the contents of the safe deposit box, jewelry and approximately $31,000.00 in cash, were converted by the defendants to their own use.[4] The amended complaint also alleges breach of fiduciary duty, breach of contract, gross negligence, and fraud against all defendants.

On June 24, 1991, the trial court granted summary judgment to Webster Safe and Scott Fisher. Mrs. Paehler appealed the judgment, but the appeal was dismissed by this Court on June 10, 1992 because the order of the trial court was not a final judgment. On November 10, 1994, the trial court entered an order pursuant to Tenn.R.Civ.P. 54.02 that made the order granting summary judgment to Webster Safe and Scott Fisher a final judgment. Mrs. Paehler did not appeal this order within thirty days, therefore, Webster Safe and Scott Fisher are not parties to this appeal. *See* T.R.A.P. 4(a).

On November 22, 1995, Union Planters, Barbie Archibald, and Jean Johnson filed a motion for summary judgment. The trial court granted the motion on February 9, 1996. Mrs. Paehler appeals the judgment of the trial court granting summary judgment to Union Planters, Archibald, and Johnson (hereinafter the defendants). Although her brief does not clearly state the issue, we perceive the issue to be whether the trial court erred in granting summary judgment. The defendants present two additional issues: 1) whether T.C.A. § 45–2–902 entitles the defendants to summary judgment, and 2) whether Mrs. Paehler's appeal should be dismissed because she failed to comply with the *Tennessee Rules of Appellate Procedure.*

We will first address the defendants' second issue. The defendants argue that Mrs. Paehler's brief does not comply with T.R.A.P. 6 and T.R.A.P. 27 because it does not contain specific references to pages in the record and does not contain the sections required by the rules.

The defendants rely upon *Duchow v. Whalen,* 872 S.W.2d 692 (Tenn.App.1993), in which this Court dismissed the appeal because the appellant's brief failed to comply with T.R.A.P. 27. *Id.* In *Duchow,* this Court stated that "we are not required to verify unsupported allegations in a party's brief by painstakingly reviewing the record." *Id.* at 693. However, *Duchow* did not deal with a *pro se* litigant. Parties who choose to represent themselves are entitled to fair and equal treatment. *Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn.App.1988). However, they are not excused from complying with applicable substantive and procedural law, and they must follow the same substantive and procedural law as the represented party. *Id.* (citations omitted).

---

1. Mrs. Paehler filed approximately ten police reports between 1988 and 1993 relating to the alleged thefts of evidence from this lawsuit.

2. Mrs. Paehler retained five different attorneys during the course of this litigation, but now she is acting *pro se.*

3. Mrs. Paehler filed the complaint in her capacity as executrix of the estate of Louis Paehler.

4. Mrs. Paehler claims that $450,000.00 was stolen from the safe deposit box, but her attorneys would not amend the complaint with this figure. The amended complaint before the trial court and this Court clearly states $31,000.00. In addition, Mrs. Paehler filed a motion to amend the complaint to add a fraud charge with damages of $3,500,000.00. However, the amended complaint does not request damages of $3,500,000.00, and the trial court denied a motion to correct the amended complaint.

We agree that Mrs. Paehler's brief does not comply with T.R.A.P. 27. Nonetheless, we will entertain Mrs. Paehler's appeal. The *Tennessee Rules of Appellate Procedure* should be construed to afford all parties a hearing on the merits. T.R.A.P. 1; *Irvin*, 767 S.W.2d at 653. This Court has the discretion to suspend or relax some of the rules for good cause, and we do so in this instance as to the strict formalities for Mrs. Paehler's brief.

█ In their second issue, the defendants argue that T.C.A. § 45–2–902 entitles them to summary judgment. The statute provides as follows:

Any bank has the right to construct a vault on its real estate, or on premises leased by it, or to rent any vault which, in the judgment of the directors, will provide reasonable means of safety against loss by theft, fire or other cause, in which vault may be placed safes, boxes, or receptacles, for the keeping of jewelry, diamonds, gold, bank notes, bonds, notes, and other valuables, and which may be rented by the bank to other persons on such terms as may be agreed by the parties, but it is understood that in no event shall such bank be liable for any loss of the jewelry, diamonds, gold, bank notes, bonds, notes, or other valuables by theft, robbery, fire, or other cause, such bank not being the insurer of the safety of the property, nor in any manner liable therefor. Such bank is not required to take any note of property thus deposited, as the person who rents a safe, box, or receptacle is, for the term of the lease, the owner thereof.

T.C.A. § 45–2–902 (1993).

█ In *Whitaker v. First American Corp.*, 779 S.W.2d 383 (Tenn.App.1989), this Court dismissed an action for the loss of items placed in a safe deposit box pursuant to T.C.A. § 45–2–902 because there was no allegation of a breach of the duty of care or of a breach of contract. *Whitaker*, 779 S.W.2d at 384. The rental of safe deposit boxes by banks creates a bailment relationship between the bank and the customer that is governed by the application of common law and statutory bailment principles. *Id.; see also Smith v. The Peoples Bank of Elk Val-*

*ley*, No. 01A01–9111–CV–00421, 1992 WL 117061, at *3 (Tenn.App. June 3, 1992). T.C.A. § 45–2–902 does not bar the application of common law bailment principles to the rental of a safe deposit box. *Smith*, 1992 WL 117061, at *3.

█ In this case, Mrs. Paehler alleged conversion, breach of fiduciary duty, breach of contract, gross negligence, and fraud. A bank can be liable to a customer for loss or damage to the bailed property if the bank fails to meet its duty to provide the customer with a level of care commensurate with that of banks in similar communities. *Whitaker*, 779 S.W.2d at 384; *Smith*, 1992 WL 117061, at *3.

█ Mrs. Paehler argues that the trial court erred in granting summary judgment to the defendants. A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn.R.Civ.P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn.App.1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id.* at 210–11. In *Byrd*, the Tennessee Supreme Court stated:

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original). Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Id.* (citing *Dunn,* 833 S.W.2d at 80).

■ Mrs. Paehler's claim for conversion against the defendants must fail because she has no proof that the defendants converted anything to their own use. "A conversion, in the sense of the law of trover, is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Mammoth Cave Prod. Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn.App.1977) (quoting *Barger v. Webb,* 216 Tenn. 275, 278, 391 S.W.2d 664, 665 (1965)). In her brief, Mrs. Paehler admits that she never accused anyone other than Fisher of stealing the contents of the safe deposit box. The defendants have not been accused of taking or converting any of Mrs. Paehler's property.

■ As for Mrs. Paehler's other claims, the defendants argue that there is no factual support in the record to support Mrs. Paehler's allegation that something was stolen from the safe deposit box and that there is no proof in the record regarding what the box contained. Mrs. Paehler argues, in her brief, that she had personal knowledge of the contents of the safe deposit box because she saw a large manilla envelope in the box.

We do not believe that Mrs. Paehler's brief glimpse on an envelope constitutes *specific facts* to overcome the defendants' motion for summary judgment. Even if Mrs. Paehler observed an envelope, she has no possible way of proving the envelope's contents. Mrs. Paehler admitted that she had never seen the box before the day it was drilled and that she had no other evidence to prove the box's content. She claims that the evidence was stolen from her house. Mrs. Paehler cannot present any sworn testimony that establishes that anything was missing from the safe deposit box; therefore, her claims for breach of fiduciary duty, breach of contract, and gross negligence must fail.

■ Finally, Mrs. Paehler asserts that the defendants fraudulently allowed Rebecca Paehler to sign the sign-in card to Louis Paehler's safe deposit box. In her complaint, Mrs. Paehler states, "It is the belief of the Plaintiff that Rebecca Paehler entered the box without proper authorization and that Union Planters, by scratching through the signature, is attempting to 'cover up' the error." However, there is absolutely no proof in the record that Rebecca Paehler actually entered Louis Paehler's safe deposit box or that anything was missing from the safe deposit box. Mrs. Paehler has not shown that she was damaged in any way because Rebecca Paehler's signature is scratched out on the sign-in card.

In conclusion, Mrs. Paehler has not come forward with *specific facts* showing there is a genuine issue of material fact for trial. She cannot rest on her bare allegations that cash was stolen from the safe deposit box. She simply has no proof that anything was taken from the safe deposit box.

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant.

FARMER and LILLARD, JJ., concur.