IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 24, 2006 Session

## DORIS BRITT v. JANNY RUSSELL CHAMBERS

**An Appeal from the Chancery Court for Hardeman County**
**No. 15080     Dewey C. Whitenton, Chancellor**

_____

**No. W2006-00061-COA-R3-CV - Filed January 25, 2007**

_____

This is a boundary line dispute. The parties are adjacent landowners. In April 2003, a dispute arose between the parties over the exact boundary line between their properties. The plaintiff erected a seven-foot privacy fence on what she perceived to be the proper boundary line. The defendant dismantled the fence and removed it. The plaintiff brought this action for the trial court to set the appropriate boundary line and for damages related to the defendant's removal of her fence. After a hearing, the trial court held in favor of the plaintiff, determining that the boundary line should be set according to a 1997 survey conducted when the plaintiff purchased her property and awarding the plaintiff damages for the removal of the fence. The defendant now appeals. We affirm, concluding that, in the absence of a trial transcript or a proper statement of the evidence, we must presume that the trial court's decision was supported by the evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Janny Russell Chambers, _pro se_.

Steven E. Farese, Jr., Ashland, Mississippi, for the appellee, Doris Britt.

### OPINION

In June 1995, Respondent/Appellant Janny Russell Chambers ("Chambers") purchased property at 35 Hebron Lane in Middleton, Tennessee.[1] In September 1997, Petitioner/Appellee Doris Britt ("Britt") purchased property at 15 Hebron Lane, adjacent to Chambers' property. In connection with the purchase of her property, Chambers received a survey conducted by Gene L. Shepard

---

[1]The appellate record does not contain a transcript of the trial proceedings nor does it contain a statement of the evidence. Therefore, the facts recited at the outset of this Opinion are taken from the complaint, the technical record, and the exhibits introduced at trial that were included in the appellate record.

("Shepard") dated May 22, 1995. Over two years later, Britt received a survey, also conducted by Shepard, dated September 17, 1997, when she purchased her property. Unfortunately, as will be explained below, the 1995 and 1997 surveys of the two properties are in conflict.

For about six or seven years, the parties amicably shared a driveway that ran along the southwest boundary of Britt's property and the northwest boundary of Chambers' property. In April 2003, a dispute arose as to the exact boundary line between the parties' property in connection with this driveway.[2] Relying on the May 22, 1995 survey conducted when she purchased her property, Chambers claimed that the northwest boundary of her property was a straight line, which would allow her to use the driveway to access her home. Chambers was of the view that she owned the property within that boundary line, and that she permitted Britt to have access over that property in order for Britt to get to her own property. Britt, however, relying on the September 17, 1997 survey, claimed that the same boundary line was not straight, but that it turned south at a certain point and cut across the driveway that had been being used by Chambers. Thus, Britt claimed that the southwest corner of her property encompassed the entire driveway area, and Chambers claimed that the northwest corner of her property encompassed that same driveway area.

According to Britt, after the parties' dispute arose, she asked Chambers to retain a surveyor of her choice to determine the boundary line, and Britt agreed to pay the cost of the survey. Therefore, in October 2003, Gregory J. Perry ("Perry"), was hired for this purpose. Perry completed the survey and was paid by Britt. This survey, though not in the record, apparently showed that Britt owned the disputed property. Chambers refused to honor the boundary line reflected in Perry's survey.

In December 2003, Britt erected a seven-foot wooden privacy fence along what she believed to be her southwest boundary. In approximately January 2004, Chambers dismantled and removed the fence erected by Britt, without notice to Britt, because it blocked Chambers' access to her property. Chambers then erected a barbed wire fence along what she believed to be her northwest boundary. This fence allegedly obstructed Britt's access to her property.

On June 3, 2004, Britt filed the instant lawsuit against Chambers, asking the trial court to determine the correct boundary line between the parties, order the removal of Chambers' barbed-wire fence, and award Britt damages sustained as a result of Chambers' removal of the seven-foot privacy fence. Chambers filed an answer, *pro se*, insisting that the barbed-wire fence was built in accordance with the correct survey and the agreement of the owners, and that the privacy fence built by Britt was improper because it blocked her access to her property. Chambers also averred that, when Britt bought her property from E. W. McKinnie ("McKinnie"), Chambers told McKinnie that she would allow Britt to have an easement over the disputed property, but she never relinquished ownership of the area in dispute. Chambers claimed that the stakes were set in the ground in accordance with the parties' understanding, and that the parties' oral agreement should be recognized by the court.

---

[2]There is some indication in the record that Britt and Chambers engaged in a physical altercation, resulting in physical injury to Chambers.

Chambers also claimed that she had been paying the taxes on the disputed property. Chambers stated that she was unable to pay Britt's attorney's fees, because she lives on a fixed income of $596.00 per month.

The trial court conducted a hearing in the matter on March 7, 2005, and conducted another hearing on July 18, 2005. The record on appeal does not contain a transcript of either hearing, nor does it contain a statement of the evidence pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure.

On July 27, 2005, the trial court entered an order holding in favor of Britt, finding that "[t]he true and correct boundary line between the parties' property shall be governed exactly as surveyed by Gene Shepard, R.L.S. on September 16, 1997 . . . ." The trial court further ordered Shepard "to re-survey the property line according to the above cited plat and to mark the line with at least six (6) permanent stakes or markers." In addition, Chambers was ordered to pay Britt $300 in restitution for damage to her property for removal of the privacy fence. Subsequently, Shepard re-surveyed the property, as ordered by the trial court. This survey set the boundary line in accordance with the September 1997 survey, pursuant to the trial court's order. On October 7, 2005, Chambers filed a pleading objecting to the survey and seeking to present additional evidence. On December 13, 2005, despite the fact that a final order on the issue had already been entered, the trial court conducted a further hearing and allowed Shepard and McKinnie to testify. No transcript of this additional hearing is included in the record on appeal. On January 20, 2006, the trial court entered a final order confirming the July 2005 order. From this order, Chambers now appeals, still *pro se*.

On appeal, Chambers challenges the trial court's decision to accept the boundary line as set out in the September 17, 1997 survey, arguing that it should have accepted the boundary as set out in the May 22, 1995 survey. On this basis, Chambers claims that she owns the disputed property, and that Britt is not entitled to erect the privacy fence to block Chambers' access to her property.

Because the case was decided by the trial court without a jury, we must review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct, unless the evidence preponderates otherwise. ***Beaty v. Wright***, No. M2005-01452-COA-R3-CV, 2006 WL 3071271, at \*5 (Tenn. Ct. App. Oct. 27, 2006). We review questions of law *de novo*, with no such presumption of correctness. Tenn. R. App. P. 13(d).

When reviewing a trial court's decision under this standard, particularly the trial court's findings of fact, it is essential that the appellate court be provided with a transcript of the trial proceedings or a statement of the evidence that comports with Rule 24 of the Tennessee Rules of Appellate Procedure.[3] Without a transcript or a statement of the evidence, the appellate court cannot

---

[3]Rule 24(c) provides in pertinent part:

**(c) Statement of the Evidence When No Report, Recital, or Transcript Is Available**. If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is

(continued...)

know what evidence was presented to the trial court, and there is no means by which we can evaluate the appellant's assertion that the evidence did not support the trial court's decision. Thus, it is well-settled that, "[i]n the absence of a transcript or statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found in favor of the Appellee." *Leek v. Powell*, 884 S.W.2d 119, 121 (Tenn. Ct. App. 1996); *see also Lallemand v. Smith*, 667 S.W.2d 85, 87-88 (Tenn. Ct. App. 1983) (holding that, in a boundary line dispute, where there is no transcript of the evidence, findings of fact must be accepted as true by the appellate court).

We are mindful that Chambers is a *pro se* litigant, and that she is entitled to fair and equal treatment. However, she is "not excused from complying with applicable substantive and procedural law" imposed on litigants represented by counsel. *Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). In this case, in the absence of a transcript or a statement of the evidence, we have no means of evaluating the evidence presented to the trial court, and the lack of a transcript or statement of the evidence is fatal to Chambers' arguments on appeal.

We note that, in support of her appeal, Chambers presented this Court with evidence of photographs, documents from the assessor's office, and old deeds to the properties in question. However, this is a court of appellate review only, and we do not consider evidence that was neither presented to nor considered by the trial court unless it has been made a part of the record as a post-judgment fact under Rule 14 of the Tennessee Rules of Appellate Procedure. *See Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998). Therefore, we cannot consider any of the additional evidence proffered by Chambers on appeal.

Britt argues that she is entitled to attorney's fees expended in defending this frivolous appeal, particularly in light of Chambers' failure to comply with the Tennessee Rules of Appellate Procedure. The decision on whether to award attorney's fees on appeal rests in the sound discretion

---

[3](...continued)

available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant . . . as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 90 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. . . .

**(d) Procedure When No Transcript or Statement Is to Be Filed**. If no transcript or statement of the evidence or proceedings is to be filed, the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve upon the appellee a notice that no transcript or statement is to be filed. . . .

Tenn. R. App. P. 24(c), (d).

-4-

of this Court.  *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995).  We decline to award attorney's fees to Britt under the circumstances of this case.

The decision of the trial court is affirmed.  Costs on appeal are to be taxed to Appellant Janny Russell Chambers, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE