IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 20, 2010

# WILLIAM J. REINHART v. RISING STAR RANCH, LLC.

**Direct Appeal from the Circuit Court for Bedford County**
**No. 11807      Franklin L. Russell, Judge**

**No. M2009-01776-COA-R3-CV - Filed August 13, 2010**

This case arises from an alleged breach of an agreement to train horses belonging to the Appellant herein. The trial court found that the Appellee training facility performed the agreed upon services, and that the Appellant did not meet his burden to show either breach of contract or damages arising therefrom. Judgment was entered in favor of the Appellee, and the Appellant's case against Appellee was dismissed with prejudice. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

William J. Reinhart, Shelbyville, Tennessee, Pro Se.

Ralph McBride, Jr., Shelbyville, Tennessee, for the appellee, Rising Star Ranch, LLC.

**MEMORANDUM OPINION**[1]

Appellant William J. Reinhart owns a horse farm in Shelbyville, Tennessee. He is a

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

breeder of Performance Tennessee Walking Horses. In March, 2007, Mr. Reinhart placed two mares and one stallion with Joe Fleming Stable, a training barn with a reputation for developing young horses. Joe Fleming Stable developed these horses to the point that they could be shown. In May, 2008, one of Mr. Reinhart's mares won the Petersburg, Tennessee show.

According to the record, Joel Weaver, the manager and trainer at Appellee Rising Star Ranch ("RSR"), approached Mr. Reinhart and asked if he would be interested in selling the mare that had won the Petersburg show. Mr. Reinhart was interested in selling all three of the horses. To that end, Mr. Weaver suggested that Mr. Reinhart move the horses to RSR for further training. On or about June 10, 2008, Mr. Reinhart placed the three horses with RSR for training during the months of June, July and August, 2008, in hopes of selling the horses during the Tennessee Walking Horse National Celebration (the "Celebration").

During the time that the horses were at RSR, Mr. Reinhart testified that he frequently went to the premises to observe the training. On June 30, 2008, Sharon Pfeif, RSR's accountant, testified that she prepared a bill for services rendered during the month of June, 2008. Mr. Reinhart came to the RSR office on July 21, 2008 to pay the June bill. One of Mr. Reinhart's horses could not be trained for approximately ten days in June, 2008. When presented with the June bill, Mr. Reinhart pointed this out to Ms. Pfeif. Ms. Pfeif testified that she advised Mr. Reinhart of the board rate, and that he made no objection to it. Mr. Reinhart paid the board rate for this horse for ten days in June, 2008.

Ms. Pfeif further testified that she prepared a bill dated July 31, 2008, for services rendered in the month of July, 2008. Mr. Reinhart came to the RSR office and paid this bill by credit card on August 22, 2008.

On September 7, 2008, Mr. Reinhart removed his horses from RSR. Thereafter, Ms. Pfeif prepared a bill for services rendered during the months of August and September, 2008, and mailed it to Mr. Reinhart. This bill charged Mr. Reinhart the board rate for all horses for August and part of September. Ms. Pfeif explained that she had only charged Mr. Reinhart the board rate as a courtesy because he was unhappy with their services. Mr. Reinhart objected to this bill. Following his objection, Ms. Pfeif investigated the matter with the trainers and groomers. According to her affidavit, Ms. Pfeif's investigation revealed that Mr. Reinhart "owed the training rate for three horses for the period of August 1, 2008 to August 20, 2008, and that he owed the board rate for the three horses for the period of August 21, 2008 to September 7, 2008." Ms. Pfeif revised the previous bill to reflect these charges and sent it Mr. Reinhart, along with a letter of explanation dated October 20, 2008.

On December 22, 2008, RSR filed a Civil Warrant against Mr. Reinhart in the General

Sessions Court of Bedford County, seeking $2,771.93 plus costs for "training, board, shoeing, parking pass, interest, and costs" associated with Mr. Reinhart's horses. On January 7, 2009, Mr. Reinhart filed a Civil Warrant against RSR under the same case number in the sessions court. By his warrant, Mr. Reinhart sought $14,722.00 for "breach of contract" on the part of RSR. Following trial in the sessions court, on or about March 17, 2009, the judge entered judgment in favor of RSR in the amount of $2,614.63 plus interest and costs, and dismissed Mr. Reinhart's civil warrant. Mr. Reinhart appealed to the Circuit Court at Bedford County.

On April 28, 2009, Mr. Reinhart filed a complaint in the circuit court, alleging that, "as a result of [RSR's] failure to perform [under the training agreement]," Mr. Reinhart accrued total damages in the amount of $14,932.50, which amount was comprised of $2,332.50 in training paid through August 17, 2008, and $12,600 ($600.00 per horse, per month) in training at Mr. Reinhart's barn to allegedly get the horses ready for the next available sell opportunity.

On May 4, 2009, RSR filed its answer, wherein it denied any breach of contract. On May 19, 2009, RSR filed a motion for summary judgment, along with the affidavits of Ms. Pfeif and Joel Weaver, supporting documentation, and a statement of undisputed material facts in support thereof. On June 19, 2009, Mr. Reinhart filed a response to the motion for summary judgment. Along with his response, Mr. Reinhart provided the affidavit of Don Mason, who assisted Mr. Reinhart in picking up the horses from RSR on September 7, 2008. According to Mr. Mason's affidavit, at that time, Mr. Reinhart's horses "were almost impossible to load on the trailer, which indicated [that] they had not been trained for a substantial period of time. The horses were not clipped or properly groomed and were in no condition to be shown to prospective buyers during the Celebration...."

Following a hearing on June 25, 2009, an Order was entered on July 9, 2009, which order granted the motion for summary judgment as it applied to RSR's civil warrant against Mr. Reinhart, and denying the motion for summary judgment as it applied to Mr. Reinhart's civil warrant/complaint against RSR.[2]

The remaining issues were tried before the court on July 23, 2009. Based upon the evidence adduced at the hearing, the trial court found that RSR did train Mr. Reinhart's horses during the month of August, 2008. Consequently, the court concluded that there was

---

[2]Neither party has raised an issue on appeal with the trial court's decision on the motions for summary judgment. Therefore, we will not review the trial court's decisions in this appeal. Additionally, while the trial court granted RSR's motion for summary judgment, it appears that some of the issues were actually litigated at trial, i.e. whether Mr. Reinhart's horses were trained in accordance with the contract.

no breach of contract on the part of RSR, and dismissed Mr. Reinhart's suit against RSR. On August 7, 2009, the court entered judgment against Mr. Reinhart in the amount of $2,614.63 together with pre-judgment interest from December 22, 2008, and dismissed Mr. Reinhart's complaint against RSR. Specifically, the court found that Mr. Reinhart "has failed to carry the burden of proof concerning breach of contract by [RSR]; that [Mr. Reinhart] has failed to carry the burden of proof regarding damages."

Mr. Reinhart filed a timely notice of appeal. Thereafter, on September 4, 2009, RSR filed a motion for discretionary costs, pursuant to Tenn. R. Civ. P. 54.04 and 59.01. Following a hearing on September 24, 2009, the court entered an order on October 1, 2009, awarding RSR judgment against Mr. Reinhart for discretionary costs in the amount of $413.00.

Mr. Reinhart raises one issue for review as stated in his brief:

> Whether the substitution of a completely different contract by Rising Star Ranch without knowledge or agreement of appellant, constitutes a breach of the original contract.

After reviewing Mr. Reinhart's appellate brief we surmise two issues which he submits for our review: (1) whether the trial court erred in finding that RSR did not breach the contract and in fact did provide training for the horses as required by the contract, and did not merely board the horses, and (2) whether the trial court erred in finding that Mr. Reinhart did not carry his burden of proof regarding damages. Mr. Reinhart' concedes, in his appellate brief, that "[a]ll elements of the contract were performed by Rising Star Ranch through June and July of 2008." Thus, it appears that the dispositive issue in this appeal is whether RSR trained Mr. Reinhart's horses during the month of August, 2008. If RSR did train the horses, as the trial court found, then RSR did not breach the contract and Mr. Reinhart would not be entitled to damages. If RSR merely boarded the horses during the month of August 2008, then it did breach the contract and Mr. Reinhart may be entitled to damages.

Before reaching the issue of whether the trial court erred in dismissing Mr. Reinhart's case against RSR, we first note that we are cognizant of the fact that Mr. Reinhart is proceeding *pro se.* While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App.2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App.1997)), "[p]ro se litigants are not ... entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App.2000) (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194-95 (D.C. Cir .1983)).

*Pro se* litigants must comply with the same substantive and procedural law to which represented parties must adhere. *Hodges*, 43 S.W.3d at 920-21.

Furthermore, because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). With respect to the trial court's conclusions on matters of law however, our review is *de novo* with no presumption of correctness. *See Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn.1996); Tenn. R. App. P. 13(d). Moreover, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies, in the first instance, with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997). In short, "if the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington*, No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb.19, 2010).

For his proof, Mr. Reinhart testified himself, and he also called Don Mason, the horse trainer who helped him remove the horses from RSR. Mr. Reinhart testified that the parties had a agreement that RSR would train his horses for $22.50 per day, per horse. He testified that he regularly visited the horses and observed training in June and July, but did not visit in August. In testifying, Mr. Reinhart opined that when he went to pick up the horses on September 7, 2008, they were "too fat," not properly trimmed, and therefore not in condition to be sold. He testified that the first bill he received for services provided in August, charged him only for boarding the horses, that he called to complain and was then sent a new bill wherein he was charged for training. He submitted to the trial court that the initial bill for boarding only, shows that RSR violated the agreement. During cross examination, Mr. Reinhart admitted going to RSR once during August and also during the Celebration for "social visits." He further testified during cross examination that it took an hour to pick up the horses. Also, he admitted that he did not have any evidence of lost sales, that the USDA requirements have depressed the market, and that he has not sold a horse in five years.

Don Mason, the horse trainer who helped Mr. Reinhart remove the horses from RSR, testified that the horses were overweight, that they were slow to load, that the horses' bridle paths were not properly trimmed and that their legs were not wrapped. Concerning the

question of whether these alleged faults were the result of improper care and/or training on the part of RSR, Mr. Mason testified, in relevant part, as follows:

> Q. And you said that you thought [the horses] might have been too fat?
>
> A. Well, one is never too fat. I mean, it's...just [that] they were kind of out of–you know...I couldn't work them long because they would give out, out of breath.
>
> Q. Is that because they were overweight?
>
> A. Well, that could be.
>
> Q. But it could be some other reason?
>
> A. Well, if they hadn't been worked it could be too.
>
> Q. Well how long do you think–you said in your...affidavit, that [the horses] had not been trained for a substantial period of time. So what, what period of time were they not trained?
>
> A. I have no idea.
>
> Q. You don't know how long they had been out of training?
>
> A. No. You can't put a date on that.

Concerning the significance of the fact that the horses were slow, Mr. Mason opined that "[u]sually, a horse that has been shown and that's fooled with a lot, a load will be easy." Inferentially, then, a slow load could mean that the horses had not been trained or worked. Concerning the alleged lack of trimming, Mr. Mason testified that this process would take approximately ten minutes per horse, and would need to be done every two to three weeks, depending on how fast the hair grows. However, there is no indication in the record that failing to trim the bridle path would interfere with the training of the animal. Likewise, Mr. Mason opined that it would take approximately ten to fifteen minutes to wrap a horse's legs. Mr. Mason testified that the legs are wrapped to keep the horse from developing calluses; he went on to state that "greasing" a horse's legs and hooves could also prevent dryness and callusing. However, there is no testimony concerning whether failure to wrap the legs would

interfere with the training process.

Perhaps more importantly, Mr. Mason testified that his opinion that the horses were not in a condition to be shown was based solely on his observation of their condition as of September 7, 2008 and thereafter. When asked whether the horses were in a condition to be shown during the August, 2008 Celebration, Mr. Mason conceded that he had not seen the horses during the Celebration, and that he did not know their condition at that time.

As part pf RSR's proof, Ms. Pfeif, the accountant for RSR testified. Ms. Pfeif contradicted Mr. Mason's statement that it had taken at least forty-five minutes to load the horses; rather, she testified that Mr. Reinhart and Mr. Mason were not on the premises more than thirty minutes. She testified that she had given him a break on his August bill by only charging him for boarding because he had complained about their services. Ms. Pfeif explained that after Mr. Reinhart complained about the bill, she checked with Mike Kelley, Brad Davis and Joel Fleming, and that all three informed her the horses were trained in August, and therefore she adjusted the bill accordingly. As she stated at trial during cross examination by Mr. Reinhart: "You wanted to pay for training because that was your agreement and that's what you got. So that's what I billed you for."

Joel Weaver, the trainer that worked with Mr. Reinhart's horses at RSR, testified that the horses were trained the month of August 2008 up to the date that the Celebration began. Because of the custom of taking the week of the Celebration off, Mr. Weaver testified that Mr. Reinhart's horses were not trained the week of the Celebration. Furthermore, Mr. Weaver testified that Mr. Reinhart came to RSR to observe the training of his horses "almost every day" up to the week of the Celebration, although he concedes that Mr. Reinhart may not have come as often during the month of August as he did in June and July. Concerning the fact that Mr. Reinhart was unable to sell any of the horses at the Celebration, Mr. Weaver testified that RSR "didn't have much luck selling anything during that Celebration. It's kind of a bad time for the horse industry." However, Mr. Weaver testified that the horses were in condition to be shown to potential buyers during the Celebration, and that they were in fact shown a time or two to potential buyers.

Mike Hilley, the assistant horse trainer for RSR, also testified that Mr. Reinhart's horses were trained up to the Celebration. He also corroborated Mr. Weaver's testimony that Mr. Reinhart had come to RSR several times in August to observe the training. Concerning the lack of wrapping on the horses' legs, Mr. Hilley explained that it was RSR's custom to remove the wraps the week of the Celebration because the horses were not trained during that time. During cross examination, Mr. Hilley testified that he personally rode some of Mr. Reinhart's horses in the month of August 2008.

Finally, James Thomason also testified regarding the training of Mr. Reinhart's horses during August 2008. Mr. Thomason worked at RSR during June through September 2008 as a groomer and assisting the trainers. He corroborated Mr. Weaver's and Mr. Hilley's testimony that the horses were trained during the month of August, up until the Celebration. He also testified, as did Mr. Weaver and Mr. Hilley, that Mr. Reinhart frequently observed the training, including August 2008, but perhaps not as often as in June and July of that year. He too testified that Mr. Reinhart's horses were in condition to be shown to potential buyers during the Celebration.

As set out above, the trial court specifically found that Mr. Reinhart failed to meet his burden of proof concerning breach of contract and damages. In stating its ruling, the trial court admitted that the original bill for the month of August 2008, charging Mr. Reinhart for boarding only, gave it some concern. However, the trial court explicitly stated that it "found Ms. Pfief to be an entirely credible witness on that subject. And she explained to us why she billed the way she did. And that she was attempting to ah, do that for the benefit of the client of the barn." Finding that Mr. Reinhart had not proven breach of contract nor damages, the trial court dismissed his counter-complaint.

Having reviewed the record in its entirety, we conclude that the evidence does not preponderate against the trial court's finding that RSR trained Mr. Reinhart's horses in August, 2008. The weight of the evidence indicates that RSR did provide training services in August, 2008, up to the week of the Celebration. The fact that the horses were allegedly overweight, that they were slow to load, and that they were neither trimmed, nor wrapped, does not, *ipso facto*, lead to a conclusion that RSR breached its agreement with Mr. Reinhart. This is especially true in light of Mr. Mason's testimony that there could be other reasons why the horses were overweight, Ms. Pfeif's testimony that it only took thirty minutes for Messrs. Reinhart and Mason to load the three horses, and RSR's trainer and groomer's testimonies that it was RSR's policy to unwrap the horse's legs the week of the Celebration. Further, three different employees of RSR testified that the horses were trained during the month of August, up until the Celebration, and that the horses were in condition to be shown to potential buyers during the Celebration. Moreover, Mr. Mason admitted that he did not know what condition the horses were in prior to September 7, 2008, and could not give an opinion as to how long the horses had not been trained. Other than the initial August bill charging him solely for boarding, Mr. Reinhart presented no evidence indicating that the horses were not trained during the month of August. From the record as a whole, we conclude that the evidence does not preponderate against the trial court's finding that RSR trained Mr. Reinhart's horses in August 2008, and that RSR was not in breach of its agreement with Mr. Reinhart. This is especially so considering the trial court's credibility finding as to Ms. Pfief and her explanation as to why the initial August bill only charged Mr. Reinhart for boarding. Mr. Reinhart has failed to direct this court to any clear and

convincing evidence contradicting the trial court's credibility determinations. Based upon the evidence in the record, the trial court correctly dismissed Mr. Reinhart's claims against RSR, and correctly awarded RSR damages for the training that it performed through August, 2008.

Mr. Reinhart's brief also asserts that the trial court erred in finding that he had not proven damages. Because the trial court found, and we affirm, that there was no breach of contract, any issue regarding damages is pretermitted.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, William J. Reinhart, and his surety.

_____
J. STEVEN STAFFORD, JUDGE