IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2020 Session

**DONALD R. FERGUSON v. SARAH K. FERGUSON**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-18-CV-1277      Kathryn Wall Olita, Judge**

_____

**No. M2019-01630-COA-R3-CV**

_____

In this divorce action, Sarah K. Ferguson ("Mother") appeals the trial court's decisions to grant Donald R. Ferguson ("Father") an absolute divorce and designate him as the primary residential parent for their two minor children. She also challenges the trial court's award of alimony. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Sarah K. Ferguson, Nashville, Tennessee, pro se.

Stacey T. Olson-Turner, Clarksville, Tennessee, for the appellee, Donald R. Ferguson.

**MEMORANDUM OPINION**[1]

Father and Mother met in South Korea, where Mother was born and raised and where Father was assigned while serving in the military. Upon Father's completion of his assignment in 1999, the couple moved to the United States. In 2001, Father retired from the military and the couple married. They had three children together, two daughters and a son. By the time the case came to trial, the oldest daughter had reached the age of majority.

_____

[1] Tenn. Ct. App. R. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

While Mother was the primary caregiver for the children, she obtained a cosmetology license and worked as a hairstylist on weekends. Mother, who is fluent in the Korean language and also speaks English, also worked as a court interpreter on occasion. When she was working, Mother earned $300 to $400 per month.

In 2011, Father began his current employment as a correctional officer at the Riverbend Maximum Security Institution in Nashville. When the case came to trial, Father was earning $37,000 per year. He received an additional $623 per month in disability benefits from the Veterans Administration. From 2016 to 2019, Father supplemented his income by working as a bar doorman.

Father commenced this action in 2018 by filing a complaint for divorce, alleging inappropriate marital conduct and irreconcilable differences. Mother answered and filed a counterclaim for divorce based on the same grounds. Mother requested an award of alimony, and each parent asked to be named the primary residential parent for their two minor children.

The competing complaints were tried in July 2019, at which time the court heard testimony from Mother and Father. Father testified that he wanted a divorce because Mother had not contributed enough to the couple's finances and because they had not had intimate relations in six years. Father testified that Mother handled the couple's finances, and although he admitted that Mother worked during the marriage as a stay-at-home mother, Father claimed that she was unwilling to obtain and maintain gainful employment outside of the home.

Father asked to be named the primary residential parent because, he alleged, Mother had been verbally abusive toward their 13-year-old daughter during an argument. Although he worked from 8:00 a.m. to 4:00 p.m., Monday through Friday, Father stated that his supervisor would accommodate a later start-time when Father had the children. Additionally, Father planned to have the 13-year-old daughter watch her 10-year-old brother until Father returned from work in the afternoon.

Mother testified that she would be the better primary residential parent because she had been the primary caregiver for 20 years. She explained that she was the one who got the children ready for school and helped them with their homework. Mother also expressed concern over Father's proposed schedule, saying that Father typically left for work between 6:30 and 7:00 a.m. and returned between 5:30 and 6:00 p.m. Mother admitted that she argued with their teen-aged daughter on a few occasions, but she denied regularly yelling at the children or being verbally abusive at any time.

Mother testified that she never had a full-time job because of the demands of her role as a stay-at-home mother. Mother stated that her schedule limitations made it difficult

to find and keep even a part-time job. She testified that Father had refused to sleep in the same bed with her for years and admitted that they had not been intimate in several years.[2]

In the final decree entered on August 13, 2019, the trial court granted Father a divorce on the ground of inappropriate marital conduct "based upon proof of conflicts over finances, as well as lack of intimacy." In fashioning the permanent parenting plan, the court considered and made findings as to each of the factors in Tenn. Code Ann. § 36-6-106. While recognizing that Mother had been the primary caregiver for the children, the court concluded that Father was better suited to be the primary residential parent "going forward." The court did not adopt either parent's proposed parenting plan. It awarded Mother residential time on every other weekend, resulting in 105 days of residential time for Mother and 257 days for Father.

In calculating child support, the court set Father's monthly adjusted gross income at $3,842 and imputed a minimum-wage income of $1,256 to Mother. After applying the relevant information to the child support worksheet, the court ordered Mother to pay child support to Father in the amount of $127 per month.

The court equally divided the parties' modest marital assets and debts. As for the marital residence—which the couple had owned for ten years but recently refinanced—the court found that the property had no equity because the value was offset by the mortgage.[3] The court awarded the marital residence to Father and made him solely responsible for the mortgage,[4] but it allowed Mother to remain in the house for 90 days "so that she c[ould] gain suitable housing and employment to get back out on her own." Father's retirement account with the State, valued at approximately $9,000, was divided equally. The court awarded Mother a 2009 Nissan Cube and awarded Husband a Chevrolet Tahoe and a 2009 Kia. Miscellaneous debts, including credit cards, of approximately $16,000 were divided equally.

On the issue of alimony, the court considered and made findings as to each of the factors in Tenn. Code Ann. § 36-5-121. The court acknowledged that the marriage was long-term but found that Mother had the ability to earn her own income without additional education or training. Thus, the court found rehabilitative alimony was unnecessary. However, the court found that Mother was the financially disadvantaged spouse and needed financial assistance "to acclimate herself to the consequences of divorce." Accordingly, the

---

[2] Father testified that he had slept on the couch for the past 15 years because he needed support for his back.

[3] The value of the residence was estimated to be $128,000 while the outstanding mortgage was approximately $125,000.

[4] The decision was based in part on the fact the mortgage was tied to Father's VA loan.

court awarded Mother transitional alimony of $400 per month for 36 months, to be offset by the $127 per month that Mother owed in child support. This appeal followed.

## ANALYSIS

We begin our analysis by noting that Mother, who has no legal training, is representing herself in this appeal.[5] The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003) (citing *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat. Bank*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997)). We do this by "measur[ing] the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers." *Id.* (citations omitted). At the same time, we must "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Id*. As a consequence, "the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Id*. (citations omitted).

Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure requires appellants to identify the issues they wish to raise in their brief. Unfortunately, Mother's handwritten brief does not include a complete statement of the issues. Nevertheless, it is apparent that she takes issue with the granting of the divorce in favor of Father, designating Father as the primary residential parent, and awarding her only transitional alimony in the amount of $400 for thirty-six months.

Although we have identified the issues Mother wants this court to consider, we find another deficiency with Mother's brief. As the appellant in this case, Mother had the responsibility to provide "[a] statement of facts, setting forth the facts relevant to the issues presented for our review with appropriate reference to the record." Tenn. R. App. P. 27(a)(6). She failed to comply with this mandate, which makes it difficult for the court to determine whether the record supports some of her factual claims.

Although Mother presents very sincere arguments, it is readily apparent that her brief is replete with facts that are not in the record; many of the facts she asserts in her brief do not appear in the transcript from the July 9, 2019 hearing before the trial judge.[6] This is significant because this court may not consider facts alleged in a brief that do not appear in the appellate record— the transcript of the evidence and exhibits must be properly admitted into evidence and transmitted to the Court of Appeals. *See Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012) ("A recitation of facts and argument in an appellate

---

[5] Mother was represented by counsel in the trial court proceedings.

[6] The only exhibit introduced during the trial was Father's income and expense statement.

brief does not constitute evidence and cannot be considered[.]" (quoting *In re M.R.*, No. M2007-02532-COA-R3-JV, 2008 WL 2331030, at \*3 (Tenn. Ct. App. June 3, 2008))).

While we are not required to search a record for facts that may support those alleged in a brief, *see Eldridge v. Eldridge*, 137 S.W.3d 1, 11 (Tenn. Ct. App. 2002), we have reviewed the transcript from the July 9, 2019 trial and find the evidence in the record does not preponderate against the facts as found by the trial court. *See* Tenn. R. App. P. 13(d) ("Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."). Consequently, we presume the trial court's findings of fact are correct. *Id*.

As for the trial court's decision to grant Husband a divorce on the ground of Mother's inappropriate marital conduct, we note that the standard of review for a trial court's legal conclusions is de novo, with no presumption of correctness. *O'Daniel v. O'Daniel*, 419 S.W.3d 280, 283 (Tenn. Ct. App. 2013) (citations omitted). Nonetheless, whether a party has proven the ground of inappropriate marital conduct is "best . . . determined by the trier of facts who has seen the parties face to face and who has observed their manner and demeanor." *Eldridge*, 137 S.W.3d at 24 (quoting *Newberry v. Newberry*, 493 S.W.2d 99, 101 (Tenn. Ct. App. 1973)). Having reviewed the record, we find no error in the trial court's decision to grant Husband a divorce on this ground.

As for the primary residential parent designation, the parenting schedule, and the award of alimony, such decisions are "peculiarly within the broad discretion of the trial judge." *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (citations omitted); *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105–06 (Tenn. 2011) ("[W]hen reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision."). Having reviewed the trial court's findings of facts and its identification and application of the relevant legal principles, we find no abuse of discretion regarding the challenged rulings and affirm the trial court in all respects.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against the appellant, Sarah K. Ferguson.

_____
FRANK G. CLEMENT JR., P.J., M.S.