IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2020 Session

## JOHN ANTHONY GENTRY v. FORMER SPEAKER OF THE HOUSE GLEN CASADA ET AL.

Appeal from the Chancery Court for Davidson County
No. 19-644-I        Patricia Head Moskal, Chancellor

_____

### No. M2019-02230-COA-R3-CV

_____

A citizen filed a petition of remonstrance with the Tennessee General Assembly and then filed a petition for writ of mandamus in chancery court requesting that the legislative chambers be ordered to hear and consider his petition of remonstrance. The trial court dismissed the petition for writ of mandamus on the basis that the petitioner was not entitled to mandamus relief. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

John Anthony Gentry, Goodlettsville, Tennessee, pro se.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Janet Irene M. Kleinfelter, Deputy Attorney General, for the appellees, House Speaker, Senate Speaker, Chief Clerk of the House, and Chief Clerk of the Senate.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

In January 2019, John Anthony Gentry, a Tennessee citizen, filed a petition of remonstrance with the Chief Clerk of the Tennessee Senate and the Chief Clerk of the Tennessee House of Representatives ("the House"). The petition was announced on the floor of both chambers on January 18, 2019, but the entire petition was not read before either chamber. During February and March 2019, Mr. Gentry met with various legislators and officers of the General Assembly to discuss the petition and his claim that he was

entitled to have the petition heard by the General Assembly. He also emailed a copy of the petition to every member of both legislative houses.

In May 2019, Mr. Gentry filed a petition for writ of mandamus in the chancery court against Former Speaker of the House Glen Casada, Lieutenant Governor McNally, and the chief clerks of the House and the Senate. The petition sought an order mandating that the House and Senate clerks "properly announce" the petition of remonstrance in accordance with Senate Rule 22 and House Rule 15 and an order requiring the Senate and House "to hear and decide" the petition of remonstrance pursuant to article 1, sections 1, 23, and 35 of the Tennessee Constitution. The defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Mr. Gentry subsequently filed an amended petition for writ of mandamus asserting three causes of action: (1) violation of a duty, pursuant to article 1, section 23, and article 10, section 1 of the Tennessee Constitution, to properly present the typewritten form of the Constitution to the public; (2) violation of a duty, pursuant to article 1, section 23, and article 11, section 16 of the Tennessee Constitution, to "receive and read Petitions at the table"; and (3) pursuant to article 1, section 17 and article 11, section 16 of the Tennessee Constitution, conspiracy "to deny due course of law through abuse of process and violation of local court and state rules of procedure" and by tendering to the court "a fraudulent and materially altered, counterfeit version" of the petition of remonstrance. In addition to the relief requested in the original petition, Mr. Gentry asked that the Clerk of the Senate correct the last phrase of article 1, section 23 of the Tennessee Constitution on the General Assembly's website "to properly read 'by address *or* remonstrance.'" Mr. Gentry later requested that the case be tried before a jury.

In a memorandum and order entered on September 11, 2019, the trial court denied Mr. Gentry's amended petition and dismissed the action. The court ruled that Mr. Gentry was not entitled to mandamus relief. He had "exercised the clear right he is granted under Art. I, § 23 to apply for redress of his grievances by address or remonstrance." As the court explained, Mr. Gentry did not satisfy the elements required to obtain a writ of mandamus. Mr. Gentry had "no clear right to compel" the specific acts he requested, and the General Assembly had no "clear duty to perform the acts" he sought to compel.

Mr. Gentry filed a Tenn. R. Civ. P. 59 motion to alter or amend and a motion to recuse the chancellor, both of which the trial court denied. Mr. Gentry then filed a motion to reconsider under Tenn. R. Civ. P. 60, and the trial court denied that motion on December 18, 2019.

On appeal, Mr. Gentry raises a number of issues, which we restate as follows:

1. Whether article 1, section 23 of the Tennessee Constitution requires the General Assembly to hear and decide a petition of remonstrance filed by a citizen of the state of Tennessee.
2. Whether Supreme Court Rule 10B, House Rule of Order 15, and Senate Rule of Order 22 are repugnant to the state constitution and violate or oppress constitutionally protected rights.
3. Whether Mr. Gentry was denied due process as a result of gross procedural errors.
4. Whether it was an abuse of discretion by the trial court to involuntarily dismiss the case while there was no operating motion to dismiss before the court.
5. Whether the defendants and their counsel can falsify evidence and make false statements to a chancery court with impunity.
6. Whether the state government has a duty to present an accurate version of the Tennessee Constitution to the public.

ANALYSIS

Mr. Gentry is representing himself on appeal, as he did at the trial level. As a pro se litigant with no legal training, Mr. Gentry is "entitled to fair and equal treatment by the courts." *Young v. Barrow*, 130 S.W.3d 59, 62 (Tenn. Ct. App. 2003) (citing *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). The following principles apply to pro se litigants:

> The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young*, 130 S.W.3d at 62-63 (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). We grant pro se litigants "a certain amount of leeway" in the preparation of their appellate briefs. *Hessmer*, 138 S.W.3d at 903 (citing *Whitaker*, 32 S.W.3d at 227; *Paehler*, 971 S.W.2d at 397). This means that courts "measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers." *Id.* (citing *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980); *Baxter v. Rose*, 523 S.W.2d 930, 939 (Tenn. 1975); *Winchester v. Little*, 996 S.W.2d 818, 824 (Tenn. Ct. App. 1998)).

I.     Article 1, section 23—the right of petition.

The basis of Mr. Gentry's petition of remonstrance is article 1, section 23 of the Tennessee Constitution, which states:

> That the citizens have a right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance.[1]

As Mr. Gentry points out, Tennessee caselaw contains little discussion of the right of petition embodied in article 1, section 23—the right "to apply to those invested with the powers of government for redress of grievances . . . by address or remonstrance." The right of petition is, however, "an ancient right" and "the cornerstone of the Anglo-American constitutional system." Norman B. Smith, *"Shall Make No Law Abridging . . .": An Analysis of the Neglected, But Nearly Absolute, Right of Petition*, 54 U. CIN. L. REV. 1153 (1986).

Under Magna Carta, noblemen petitioned the king to secure their rights. Smith, *supra*, at 1153. Parliament used the Petition of Right to "gain popular rights from the king," and the people eventually "used petitioning as the means to secure their own rights against parliament." *Id.* Thus, "[t]he development of petitioning is inextricably linked to

---

[1] In *Courtyard Manor Homeowners' Ass'n, Inc. v. City of Pelham*, 295 So. 3d 1061, 1065 (Ala. 2019), the Alabama Supreme Court interpreted a similar provision, § 23 of that state's constitution, which gave citizens the right "to apply to those invested with the power of government for redress of grievances or other purposes, by petition, address, or remonstrance." In that context, the Court stated:

> Black's Law Dictionary defines "remonstrance" as "[a] formal document stating reasons for opposition or grievance." Black's Law Dictionary 1549 (11th ed. 2019). Garner's dictionary defines "address," a verb, as "to direct (a question, etc.) to (someone)." Garner's Dictionary of Legal Usage 20 (3d ed. 2011). The use of the words "address" and "remonstrance" in § 25 merely denotes various methods of applying to the government for the redress of grievances; this Court is not at liberty to broaden the meaning of those words to impose on the government a duty to hold a hearing or otherwise to respond, as Courtyard Manor suggests. The right to petition or complain about governmental action or inaction is clearly within the Alabama Constitution; nothing can prevent citizens from asking their government to consider a request. But, requiring a response, or in this case mandating that a city hold a hearing, imposes a duty that does not exist under our law. We must respect the legislative function of governments and not intrude on their separate, but coequal, power to decide when, where, and whether to conduct hearings or respond to petitions. Legislative inaction in this case is cured not by court intervention, but at the ballot box.

*Courtyard Manor*, 295 So. 3d at 1065.

the emergence of popular sovereignty." *Id.* The drafters of the United States Constitution guaranteed the right of petition in the First Amendment:

> Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

It should also be noted that "[v]igorous exercise of the right to petition has been associated with forward strides in the development of speech, press, and assembly." Smith, *supra*, at 1179.

Mr. Gentry asks this court to determine whether the right of petition includes the right to have the legislature hear or consider his petition. This question has been answered in the negative by the United States Supreme Court. In *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463 (1979), the state highway commission refused to consider grievances by employees of the Arkansas highway department unless the employees submitted their complaints directly to a designated employer representative. The district court held that this procedure violated the First Amendment by denying the employees' union the ability to submit grievances effectively on behalf of the employees. *Smith*, 441 U.S. at 463. The Eighth Circuit affirmed. *Id.* The Supreme Court granted certiorari and reversed the judgment of the court of appeals. *Id.* at 464. While recognizing that procedures bypassing the union "might well be unfair labor practices" if federal statutes applied, the Court found no constitutional violation. *Id.* In reaching this conclusion, the Court reasoned:

> The First Amendment right to associate and to advocate "provides no guarantee that a speech will persuade or that advocacy will be effective." [*Hanover Twp. Fed'n of Teachers v. Hanover Cmty. School Corp.*, 457 F.2d 456, 461 (1972)]. The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so . . . . But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it.

*Id.* at 464-65 (citations and footnote omitted). The union's complaint was that the commission "refuses to consider or act upon grievances when filed by the union rather than by the employee directly." *Id.* at 465. The Court concluded that the Constitution did not prohibit such an "impairment." *Id.* at 466. In the Court's view, "all that the Commission has done in its challenged conduct is simply to ignore the union. That it is free to do." *Id.; see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 286-87 (1984) (citing *Smith* and upholding state public employment labor statute restricting participation in "meet and confer" sessions to union representative).

In the Tennessee case of *Vincent v. State*, No. 01A-01-9510-CH-00482, 1996 WL 187573, at *1 (Tenn. Ct. App. Apr. 19, 1996), Ms. Vincent filed a mandamus action to force state officials to include on the ballot for the November 1994 election "a question concerning the process of 'initiation and referendum' (I & R)." The trial court granted the defendants' motion to dismiss for failure to state a claim upon which relief can be granted. *Vincent*, 1996 WL 187573, at *1. On appeal, the court found no statutory or constitutional authority for citizens to require that an issue be placed on a ballot. *Id.* at *2. Responding to Ms. Vincent's reliance upon article 1, section 23 of the Tennessee Constitution as a source of authority, the court stated that this provision "guarantees the right of peaceable assembly, to '*instruct*' representatives, to '*apply*' to officials for redress of grievances, or other purposes 'by address or remonstrance.'" *Id.* Thus, the court concluded, article 1, section 23 did not empower a group of citizens to compel officials to place a certain question on a ballot. *Id.*

This court addressed the right of petition again in *State ex rel. Potter v. Harris,* No. E2007-00806-COA-R3-CV, 2008 WL 3067187, at *1 (Tenn. Ct. App. Aug. 4, 2008), a case involving a petition for referendum to repeal a local options sales tax. The relators circulated the petition for signatures and submitted it to the county election commission for certification and placement on the ballot. *Harris*, 2008 WL 3067187, at *1. Pursuant to the statutory procedure, the commission checked the authenticity of the signatures and the registration of the signatories. *Id.* The commission determined that the petition did not include enough valid signatures and refused the relators' demand for certification. *Id.* at *1-2. The relators then filed a petition for writ mandamus in chancery court to compel certification; the petition included allegations that the commission's actions violated constitutional rights. *Id.* at *2. The trial court granted summary judgment in favor of the commission under an arbitrary and capricious standard of review. *Id.* at *3.

One of the relators' constitutional arguments on appeal was that the commission's rejection of signatures based upon the signers' addresses or lack of voter registration at the time of signing deprived them of their right of petition under article 1, section 23 of the Tennessee Constitution. *Id.* at *8. The court responded:

> While some states, *e.g.* Colorado and Arizona, have provided for referendum in their state constitutions, Tennessee has not done so. As we noted in *Vincent v. State*, No. 01A-01-9510-CH-00482, 1996 WL 187573 at *3 (Tenn. Ct. App. M.S., filed April 19, 1996), "[t]he Constitution of Tennessee conveys to the three designated departments all governmental power of the state. It contains no reservation to the people of the powers of initiative or referendum." And we do not agree that either the cited Petition Clause of the Tennessee Constitution or its federal counterpart pertain to a petition to initiate a referendum. Tennessee courts have recognized that Article I, § 23 of the state constitution serves to protect the citizen's rights "to '*instruct*' representatives [and] to '*apply*' to officials." *Vincent,* at *2

(emphasis added), and the U.S. Supreme Court has construed the Petition Clause of the federal constitution as a guaranty "that people 'may communicate their will' through direct petitions to the legislature and government officials." *McDonald v. Smith,* 472 U.S. 479, 482 (1976).

*Id.* at *9. Thus, the court found no violation of the right of petition.

Also instructive is a Maryland decision interpreting a similar provision of that state's constitution. In *Richards Furniture Corp. v. Board of County Commissioners of Anne Arundel County*, 196 A.2d 621, 623-25 (Md. Ct. App. 1964), a furniture company challenged the validity and constitutionality of a legislative enactment regulating its operations. The Maryland appellate court rejected all of the company's challenges, including its assertion that the act violated Maryland's constitutional provision stating that "every man hath a right to petition the Legislature for the redress of grievances in a peaceable and orderly manner." *Richards Furniture*, 196 A.2d at 626; MD CONST. DECLARATION OF RIGHTS art. 13. The court stated that the constitution "does not require that a hearing be held upon suggested legislation." *Richards Furniture*, 196 A.2d at 626. Addressing the impact of article 13, the court reviewed the history of the right of petition:

The right of petition first appeared in Magna Carta, Chapter 61, and was incorporated in the English Bill of Rights of 1689. Corwin, Constitution, United States, 82 Congress, 2d Session Senate Document No. 170, p. 805. However, the meaning of the "right to petition the Legislature for redress of grievances" can best be understood in the context of the pre-Revolutionary period between the enactment of the Stamp Act in 1765 and the Declaration of Independence by the Colonies in 1776. Morgan, The Stamp Act Crisis, pp. 53-70; Rossiter, Seedtime of the Republic, 319. The celebrated trial in 1734 of John Peter Zenger, the newspaper editor and pamphleteer, for seditious libel had shown the colonists the fate to be expected by outspoken critics of British policy. Drinker, The Four Freedoms of the First Amendment, p. 5. The suppression by the British of written and spoken criticism by the Colonists of British colonial policies was one of the real fears of the period. Cooley, op. cit. 498; 1 Blackstone; Commentaries (Lewis ed.), 142(3). And the rights of the Colonists, as Englishmen, to the freedom of speech, press, assembly and petition were among the most cherished rights of the citizens of that time. It was in the light of this background that the framers of the Declarations of Rights of the original States and the Bill of Rights of the Federal Constitution drafted the provisions relating to the "right to petition" the legislative branch of the government.

It is clear, we think, that the authors and the people who actually adopted our Declaration of Rights intended no more than to permit any person or peaceable assembly of persons, without fear of reprisal or

- 7 -

prosecution, to communicate directly with the legislative body by way of a statement of grievances and a petition requesting a correction of wrongs previously committed. The appellant is seeking herein not a right to petition for the *redress* of an alleged grievance after the passage of a law which it does not like, but the right of a hearing and a right to petition *before* the passage of the law. The right guaranteed by Article 13 provides no assistance to the appellant in this regard.

*Id.* at 626-27; *see also Courtyard Manor Homeowners' Ass'n, Inc. v. City of Pelham*, 295 So. 3d 1061, 1064-65 (Ala. 2019) (holding that state constitution's right of petition did not require legislative body to accept or reject citizens' proposed legislative initiative); *Piekarski v. Smith*, 153 A.2d 587, 592 (Del. 1959) (stating that, "[h]istorically, the right of petition means just what it says: the right to present to the sovereign a petition or remonstrance setting forth a protest or grievance," and that the right does not include "the right to debate in person or through counsel the subject matter of the remonstrance").

Under Tennessee law, a court may issue a writ of mandamus only "where a plaintiff's right to the relief sought has been clearly established, the defendant has a clear duty to perform the act the plaintiff seeks to compel, and 'there is no other plain, adequate, and complete method of obtaining the relief to which one is entitled.'" *Manhattan, Inc. v. Shelby Cnty.*, No. W2006-02017-COA-R3-CV, 2008 WL 639791, at *7 (Tenn. Ct. App. Mar. 11, 2008) (quoting *Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466, 479 (Tenn. 2004)). Even if the plaintiff establishes a "clear legal right," the issuance of the writ remains within the discretion of the trial court. *Harris v. State*, 34 S.W. 1017, 1022 (Tenn. 1896). As discussed above, Mr. Gentry does not have a clearly established right to have his petition heard or considered by either house of the General Assembly.

In arguing that the General Assembly had a clear duty to consider his petition of remonstrance, Mr. Gentry points to House Rule of Order 15 and Senate Rule of Order 22. House Rule of Order 15 states: "Before any petition or memorial addressed to the House shall be received and read at the table, a brief statement of the contents of the petition or memorial shall be filed with the Chief Clerk." The Senate rule is similar. Mr. Gentry interprets these rules to mean that both chambers "have a duty to receive and read petitions at the table." We do not agree.

Article 2, section 12 of the Tennessee Constitution addresses the power of the legislature to regulate itself:

Each House may determine the rules of its proceedings, punish its members for disorderly behavior, and, with the concurrence of two-thirds, expel a member, but not a second time for the same offence; and shall have all other powers necessary for a branch of the Legislature of a free State.

Our Supreme Court has interpreted this provision to give the legislative houses the right to make their own rules and to be the judge of those rules. *State v. Cumberland Club*, 188 S.W. 583, 585 (Tenn. 1916). The role of the courts is limited "to ascertain[ing] whether the Constitution has been complied with." *Id.*; *see also Mayhew v. Wilder*, 46 S.W.3d 760, 772-74 (Tenn. Ct. App. 2001). Thus, the General Assembly had no duty to read at the table or to hear and decide Mr. Gentry's petition of remonstrance.

In light of the absence of a clear right to have his petition heard and no clear duty on the part of the General Assembly to hear it, we conclude that the trial court acted within its discretion in denying Mr. Gentry's petition for a writ of mandamus.

II. Constitutionality of Supreme Court Rule 10B and House and Senate rules.

Mr. Gentry asserts that Supreme Court Rule 10B,[2] House Rule of Order 15, and Senate Rule of Order 22 are repugnant to the Tennessee Constitution and violate or oppress constitutionally protected rights.

Mr. Gentry did not raise these constitutional arguments concerning the House or Senate procedural rules until he filed his Rule 59.04 motion to alter or amend the trial court's final order denying his amended petition. Motions pursuant to Tenn. R. Civ. P. 59 "should not be used to raise new, previously untried theories or to present new, previously unasserted, legal arguments." *Local Union 760 of Int'l Bhd. of Elec. Workers v. City of Harriman*, No. E2000-00367-COA-R3-CV, 2000 WL 1801856, at *4 (Tenn. Ct. App. Dec. 8, 2000). The trial court acted properly in declining to address Mr. Gentry's constitutional challenge.

With respect to Mr. Gentry's challenge to the constitutionality of Supreme Court Rule 10B, the trial court declined to address the issue in part because Mr. Gentry did not raise it until he filed his reply brief on his Rule 60.02 motion. A reply brief cannot be used to raise new issues. *See* TENN. R. CIV. P. 7.02(1); *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 392 (Tenn. Ct. App. 2009). Moreover, "only the Tennessee Supreme Court may determine the facial validity of its rules." *Long v. Bd. of Prof'l Responsibility of the Supreme Ct. of Tenn.*, 435 S.W.3d 174, 184 (Tenn. 2014). Thus, the trial court properly declined to address this constitutional issue.

III. Due process issues.

Mr. Gentry further argues that he was denied due process as the result of "gross procedural errors" that allegedly occurred with respect to his original petition for writ of mandamus.

---

[2] Supreme Court Rule 10B concerns disqualification or recusal of a judge, the subject of Mr. Gentry's petition of remonstrance.

We begin with a review of the relevant procedural history. The defendants filed a motion to dismiss Mr. Gentry's original petition for writ of mandamus on June 7, 2019. On June 12, 2019, Mr. Gentry filed a motion to strike the defendants' motion to dismiss for failure to adhere to local rules. After a hearing on June 21, 2019, the trial court entered an order denying Mr. Gentry's motion to strike. On July 8, 2019, the trial court entered a separate order based on the same hearing stating that it reserved ruling on the defendants' motion to dismiss and requesting copies of caselaw cited by the defendants. The court allowed Mr. Gentry additional time to respond to the defendants' supplemental authority, "without further oral argument." The court then took the motion to dismiss under advisement. On July 8, 2019, Mr. Gentry filed a motion to alter the court's order denying his motion to strike.[3] He filed a corrected and amended motion to alter the same order on July 13, 2019.

On July 29, 2019, Mr. Gentry filed a motion for leave to amend his petition for writ of mandamus.

The trial court heard Mr. Gentry's motion to alter the order denying his motion to strike on August 16, 2019. Relying on the requirements of Tenn. R. Civ. P. 12.06, the court found that Mr. Gentry's motion "was not directed to a pleading containing an insufficient defense or a pleading containing any redundant, immaterial, impertinent or scandalous matter." The court entered an order on August 19, 2019, denying Mr. Gentry's motion to alter, which the court treated as a motion to revise because the order at issue was not a final order.

On August 19, 2019, the trial court also entered an order granting Mr. Gentry leave to file his amended petition for writ of mandamus, which was filed the same day.

Mr. Gentry's argument regarding procedural violations stems from the defendants filing their motion to dismiss on June 7, 2019, and setting it for hearing on June 21. According to Mr. Gentry's interpretation of the local rules, the motion should not have been set for hearing until at least 37 days after the filing date.[4] We need not, however,

---

[3] A few days later, Mr. Gentry filed a motion to alter the July 8, 2019 order of the court regarding the motion to dismiss. The trial court entered an order on July 10, 2019, entitled Order Clarifying Order on June 21, 2019 Hearing. In this order, the court clarified that "it is only the Court's consideration of the Motion to Dismiss that is 'without further oral argument.'" Mr. Gentry thereafter struck his motion concerning the July 8, 2019 order.

[4] Mr. Gentry bases his analysis on Davidson County local court rule 26.03, which addresses motions for summary judgment. *See* TENN. 20TH DIST. CT. RULES OF PRACTICE § 26.03. It is only when a court chooses to consider evidence outside the pleadings that a motion to dismiss is converted to a motion for summary judgment. *See Schodowski v. Tellico Vill. Prop. Owners Ass'n, Inc.*, No. E2015-01145-COA-R3-CV, 2016 WL 1627895, at *8 (Tenn. Ct. App. Apr. 23, 2016). Local court rule 26.03 did not apply here because the trial court did not consider the petition of remonstrance in ruling on the defendants' motion to dismiss.

decide how the local rules apply in this situation. The motion to dismiss about which Mr. Gentry claims he was denied due process was never ruled upon by the trial court. Once Mr. Gentry filed his amended petition, the original petition (and all related motions) became moot. An amended petition "supersedes and destroys the original complaint as a pleading." *H.G. Hill Realty Co., L.L.C. v. Re/Max Carriage House, Inc.*, 428 S.W.3d 23, 35 (Tenn. Ct. App. 2013) (citing *McBurney v. Aldrich*, 816 S.W.2d 30, 33 (Tenn. Ct. App. 1991)).

The trial court properly rejected Mr. Gentry's due process argument.[5]

IV.     Dismissal of amended petition without motion.

Mr. Gentry asserts that the trial court abused its discretion in dismissing the amended petition for writ of mandamus with no motion before the court.

Our Supreme Court has interpreted the Tennessee Rules of Civil Procedure to allow a trial court "under certain circumstances and upon adequate grounds" to "[s]ua sponte[6] order the involuntary dismissal of an action." *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn. 1978). The Court advised that "this power must be exercised most sparingly and with great care that the right of the respective parties to a hearing shall not be denied or impaired." *Id.* A trial court has the authority to dismiss a case sua sponte for failure to state a claim for which relief can be granted. *See Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975).

To evaluate the actions of the trial court in the present case, it is important to bear in mind that mandamus is a "summary remedy" that is "to be applied only when a right has been clearly established." *Peerless Constr. Co. v. Bass*, 14 S.W.2d 732, 733 (Tenn. 1929). A defendant is not obligated to answer a petition for writ of mandamus "that does not present a prima facie case to justify granting the writ." *Jellicorse v. Russell*, 1 S.W.2d 1011, 1012 (Tenn. 1928). As discussed above, the plaintiff must establish a clear right to the relief sought and a clear duty on the part of the defendant to perform the requested

---

[5] Mr. Gentry also argues that he was denied due process because the trial judge was not impartial. Mr. Gentry did not raise this issue until he filed a post-judgment motion to recuse. A litigant must bring alleged errors to the attention of the trial court in a timely manner in order to preserve those issues for appeal, and "objections to the competency of the trial judge are deemed waived if not raised before trial." *Woodside v. Woodside*, No. 01-A-01-9503-PB00121, 1995 WL 623077, at *9 (Tenn. Ct. App. Oct. 25, 1995) (Koch, J., concurring) (citing *Dupuis v. Hand*, 814 S.W.2d 340, 342 (Tenn. 1991); *Grozier v. Goodwin*, 69 Tenn. 125, 128 (1878)).

[6] "Sua sponte" is Latin for "of one's own accord; voluntarily." BLACK'S LAW DICTIONARY (11th ed. 2019). Black's Law Dictionary defines the term to mean: "[w]ithout prompting or suggestion; on its own motion." *Id.* An example of its use is: "The court took notice sua sponte that it lacked jurisdiction over the case." *Id.*

act(s) to be entitled to a writ of mandamus. *See Manhattan, Inc.*, 2008 WL 639791, at *7. In *Cotten v. Tennessee Board of Paroles*, No. M2001-00875-COA-R3-CV, 2002 WL 1484446, at *1 (Tenn. Ct. App. July 12, 2002), this court affirmed the trial court's sua sponte dismissal of a petition for writ of mandamus "because mandamus was not the appropriate remedy and the Petitioner was not in custody of the State of Tennessee for the purposes of parole revocation." In the present case, the trial court acted within its discretion in dismissing the petition for a writ of mandamus sua sponte because, as discussed above, Mr. Gentry could not establish a clear right to the relief he sought or a clear duty on the part of the defendants to perform the requested acts. The trial court set out the reasons for its decision in a detailed memorandum.

### V. Falsifying evidence.

Mr. Gentry frames this issue to be whether the defendants and their counsel can falsify evidence and make false statements to a chancery court with impunity. The crux of his argument is that the defendants attached a "falsified counterfeit version" of his petition of remonstrance to the memorandum in support of their motion to dismiss Mr. Gentry's original petition for writ of mandamus.

After the defendants filed their motion and memorandum, Mr. Gentry filed a true copy of his petition of remonstrance as an attachment to his response to the defendants' motion to dismiss and supporting memorandum.[7] On September 6, 2019, the trial court held a hearing on several of Mr. Gentry's motions, including motions for sanctions under the Tennessee Rules of Civil Procedure and Davidson County local court rules based upon his assertion that the defendants and their counsel "maliciously and materially altered and concealed evidence" by attaching an "inaccurate and incomplete" version of the petition of remonstrance to their memorandum. In an order filed on September 11, 2019, the trial court denied Mr. Gentry's motion for sanctions and supplemental motion for sanctions.

Appellate courts review a trial court's imposition of sanctions pursuant to Tenn. R. Civ. P. 37 under an abuse of discretion standard. *Amanns v. Grissom,* 333 S.W.3d 90, 98 (Tenn. Ct. App. 2010). Likewise, we review a trial court's ruling on a Rule 11 motion under an abuse of discretion standard. *Hooker v. Sundquist*, 107 S.W.3d 532, 535 (Tenn. Ct. App. 2002). A trial court abuses its discretion when its decision "has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable." *Id.* (citing *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 191 (Tenn. 2000)).

---

[7] In its September 11, 2019 order, the trial court stated that the defendants attached to their memorandum "a copy of the thirteen-page Remonstrance, although the cover page of Respondents' exhibit was different from the cover pages Mr. Gentry had exhibited to his mandamus petition." Mr. Gentry provided as an exhibit to his memorandum "his 72-page Remonstrance," "but without approximately 700 additional pages of appendices that he stated were filed with the Remonstrance in the House and Senate."

a. Spoliation.

In his motion for sanctions, Mr. Gentry argued that the defendants should be sanctioned under Tenn. Rs. Civ. P. 34A.02 and 37. Rule 37 of the Tennessee Rules of Civil Procedure governs sanctions for failure to make or cooperate in discovery. Rule 34A.02 provides: "Rule 37 sanctions may be imposed upon a party or an agent of a party who discards, destroys, mutilates, alters, or conceals evidence." TENN. R. CIV. P. 34A.02. The trial court rejected Mr. Gentry's argument for alleged spoliation of evidence for three reasons. First, there was no spoliation of evidence. In *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 746-47 (Tenn. 2015), our Supreme Court established the following factors to be considered by a trial court in determining the sanctions, if any, to impose for the spoliation of evidence:

> (1) the culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent;
> (2) the degree of prejudice suffered by the non-spoliating party as a result of the absence of the evidence;
> (3) whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation; and
> (4) the least severe sanction available to remedy any prejudice caused to the non-spoliating party.

The implication from these factors is that spoliation requires the destruction of the evidence, which did not occur in the present case. Because Mr. Gentry provided the trial court with a copy of the complete version of his petition of remonstrance, Mr. Gentry suffered no prejudice. Moreover, the defendants' copy of the petition of remonstrance was not submitted as evidence; it was an attachment to a memorandum in support of a motion.

The second reason that the trial court rejected Mr. Gentry's spoliation argument was that, as previously stated, the copy of the petition for remonstrance attached to the defendants' memorandum was not submitted as evidence. In making their motion to dismiss for failure to state a claim and lack of subject matter jurisdiction, the defendants admitted the truth of all relevant and material allegations in Mr. Gentry's petition for writ of mandamus. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The attachment of the petition of remonstrance served only to confirm that Mr. Gentry filed such a petition with the clerks of the House and the Senate.

Third, as discussed above, Mr. Gentry's original petition became moot when he filed his amended petition for writ of mandamus.

- 13 -

b. Rule 11.

Mr. Gentry argued in a supplemental motion for sanctions, filed on August 22, 2019, that the defendants should be sanctioned under Tenn. R. Civ. P. 11. This motion was heard on September 6, 2019. Tennessee Rule of Civil Procedure 11.03(1)(a) requires a party moving for sanctions under Rule 11.02 to serve the motion upon the opposing party at least 21 days before filing the motion with the court. The trial court denied Mr. Gentry's motion pursuant to Rule 11 for his failure to comply with this "safe harbor" provision. The court further noted the lack of factual support for Mr. Gentry's motions for sanctions and the mootness of the defendants' motion to dismiss in light of Mr. Gentry's filing of the amended petition.

We find no abuse of discretion in the trial court's denial of Mr. Gentry's motions for sanctions.

VI.      Copy of Constitution on website.

Finally, Mr. Gentry argues that the trial court erred in failing to order the defendants to present an accurate version of the Tennessee Constitution to the public. This argument stems from the fact that, when Mr. Gentry presented his petition of remonstrance to the General Assembly, the Tennessee Constitution on the General Assembly website contained a typographical error so that article 1, section 23 stated that citizens have a right "to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address *of* remonstrance," instead of "address *or* remonstrance."[8] The trial court ruled that, because the defendants have no duty to display the Tennessee Constitution, the court had no authority to order them to correct the version posted voluntarily on the General Assembly website.

We find no merit in Mr. Gentry's argument that he is entitled to mandamus relief for the General Assembly's typographical error. As discussed above, article 2, section 12 of the Tennessee Constitution gives the legislature the power to regulate itself and includes "all other powers necessary for a branch of the Legislature of a free State." Pursuant to the doctrine of separation of powers found in article 2, sections 1 and 2 of the Tennessee Constitution, "'The legislature has unlimited power to act in its own sphere, except so far as restrained by the Constitution of the state and of the United States.'" *Mayhew*, 46 S.W.3d at 774 (quoting *Bank of Commerce & Trust Co. v. Senter,* 260 S.W. 144, 146 (Tenn. 1924)).

Furthermore, as the trial court pointed out, the General Assembly has no duty to display the Tennessee Constitution. The official version of the Tennessee Code, including the Constitution, appears in volumes of Tennessee Code Annotated certified by the

---

[8] According to Mr. Gentry's brief, he learned of the correct wording at a hearing on June 21, 2019. As of the date of the filing of this opinion, the error remains on the General Assembly website.

- 14 -

Tennessee Code Commission. Tenn. Code Ann. §§ 1-1-110–1-2-114. The General Assembly is under no duty to perform the act of correction requested by Mr. Gentry in his mandamus action.

Thus, the trial court acted within its discretion in dismissing Mr. Gentry's petition for a writ of mandamus. We would, however, encourage the General Assembly to make the correction.

CONCLUSION

The judgment of the trial court is affirmed. Costs of appeal are assessed against the appellant, John Anthony Gentry, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE